Clifford S Davidson, OSB No. 125378
csdavidson@swlaw.com
Marsha Cotton, *pro hac vice*
mcotton@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
Telephone:  503.624.6800
Facsimile:   503.624.6888
Attorneys for Defendants The Urban League of
Portland, Inc., Nkenge Harmon Johnson (erroneously
sued as "Nkenge Harmon-Johnson"), Karis Stoudemire-
Phillips, Dr. James Mason, and Sean Murray

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| STEVEN HOLT, an individual, and TRY EXCELLENCE, LLC, an Oregon Domestic limited liability company,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE URBAN LEAGUE OF PORTLAND, INC., an Oregon Domestic non-profit corporation; NKENGE HARMON-JOHNSON, individually and as President and CEO of THE URBAN LEAGUE OF PORTLAND, INC.; MICHAEL LEWELLEN, individually and as Board Chairman of THE URBAN LEAGUE OF PORTLAND, INC.; KARIS STOUDAMIRE-PHILLIPS, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; JAMES MASON, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; SEAN MURRAY, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; NATIONAL URBAN LEAGUE, INC., a New York Domestic not-for-profit corporation; MARC MORIAL, individually and as President and CEO of NATIONAL URBAN LEAGUE, INC.; and TINA PIZZIMENTI, individually and as the Chief of Staff to CEO Defendant Morial of Defendant NATIONAL URBAN LEAGUE,<br><br>    Defendants. | Case No. 3:22-cv-837-YY<br><br>DEFENDANTS THE URBAN LEAGUE OF PORTLAND, INC.'S, AND NKENGE HARMON JOHNSON'S, SPECIAL MOTION TO STRIKE PURSUANT TO ORS 31.150-31.152<br><br>ORAL ARGUMENT REQUESTED |

**LR 7-1 CERTIFICATION**

The parties conferred but did not resolve this motion.

**MOTION**

Pursuant to ORS 31.150-31.152, defendants The Urban League of Portland, Inc. and Nkenge Harmon Johnson ("Movants") hereby move to dismiss Plaintiffs' Complaint in its entirety, or strike individual claims within it, because the Complaint and claims arise from speech or petition conduct enumerated in the anti-SLAPP statute, and because Plaintiffs cannot support those claims with admissible evidence. ORS 31.150(1), (2)(d), and (3). The Motion is based on the accompanying memorandum; the Declarations of Jane Doe, Nkenge Harmon Johnson, and Clifford Davidson; matters subject to judicial notice; the Court's file; and any further evidence or argument that Movants might offer in reply or at the hearing on the Motion.

ANTI-SLAPP MOTION

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND RELEVANT FACTUAL BACKGROUND. ........................... 1

      A.      Jane Doe attends a community meeting as ULPDX's representative. Holt makes a harassing and demeaning comment about her in front of everyone there. Jane Doe reports that harassment to Prosper Portland—a public body with which Holt contracts. .............................................................. 2

      B.      National Urban League informs ULPDX that the National Urban League president would be speaking on a panel with Dr. Holt relevant to the expansion of I-5. Ms. Harmon Johnson informs the president of Jane Doe's complaint against Dr. Holt. ........................................................... 4

II.     PLAINTIFFS' CLAIMS ARISE FROM CONDUCT PROTECTED BY ORS 31.150(2). ACCORDINGLY, ANY OR ALL CLAIMS ARE SUBJECT TO DISMISSAL IF PLAINTIFFS FAIL TO SUPPORT THEM LEGALLY AND FACTUALLY.................................................................................................. 6

III.    PRONG 1: MOVANTS SATISFY THEIR BURDEN OF SHOWING THAT PLAINTIFFS' CLAIMS ARISE OUT OF A STATEMENT, DOCUMENT, OR CONDUCT LISTED IN ORS 31.150(2)..................................................... 7

      A.      The statements vaguely alleged in the Complaint concerned a person in the public eye. They comprise conduct in furtherance of the constitutional right of free speech in connection with a public issue or issue of public interest, within the meaning of ORS 31.150(2)(d). ............................................ 7

            1.      Sipple v. Foundation for Nat. Progress supports applying ORS 31.150(2)(d). ............................................................................... 9

            2.      Additional persuasive California authorities support applying ORS 31.150(2)(d). ............................................................................... 11

      B.      Plaintiffs' allegations that the (accurate) accusation of harassment has circulated widely in the community, to the point of causing $7,000,000 in damages, is further evidence of public interest within the meaning of ORS 31.150(2)(d). ............................................................................... 12

IV.     PRONG 2: PLAINTIFFS CANNOT PRESENT SUBSTANTIAL EVIDENCE TO SUPPORT THEIR CLAIMS..................................................................... 12

      A.      ULPDX and Harmon Johnson enjoy a qualified privilege that Plaintiffs cannot rebut.................................................................................................. 13

      B.      Because Holt is a public figure, he must show that Movants made knowingly or recklessly false statements, and that he has suffered actual damages as a result of the purportedly false statements. ................................... 13

      C.      Holt's public figure status is imputed to his company, plaintiff Try Excellence, LLC. ............................................................................... 14

**TABLE OF CONTENTS**
(continued)

**Page**

V.    CONCLUSION.................................................................................................. 15

**MEMORANDUM**

## I.    INTRODUCTION AND RELEVANT FACTUAL BACKGROUND.

In 2020, plaintiff Dr. Steve Holt, who was facilitating a committee meeting relating to the future of an historically Black Portland neighborhood, objectified a pregnant Urban League of Portland ("ULPDX") employee by making a harassing comment about her in front of a room full of people—while she was there to represent ULPDX. The employee lodged a complaint with Prosper Portland, the public agency that had contracted with Holt to facilitate community meetings about major construction projects in the Albina neighborhood. Holt now alleges that false statements or "rumors" about his harassment have spread throughout the community and damaged him and his company to the tune of $7,000,000. And he's sued ULPDX's President and CEO, and its current and former board members.

ULPDX suspects that the true purpose of Holt's lawsuit is to throw mud on those who disagree with the policy options Holt is advancing on behalf of construction companies and others. But whether or not Holt is abusing court process by suing for an ulterior purpose, his claims are unsupportable as a matter of law and fact. The Court therefore should dismiss them without prejudice pursuant to ORS 31.150-.155, Oregon's anti-SLAPP statute.

Movants anticipate Dr. Holt will contend—notwithstanding his allegations of widespread circulation of "rumors" and other statements concerning his harassment—that the statements are not a matter of public interest and he is not in the public eye. But the myriad leadership positions alleged in the Complaint, the nature of the damages he alleges, and the evidence Movants submit of Dr. Holts media presence and role in the Black community (Davidson Exs. 3 through 10), all refute Dr. Holt's attempted recharacterization of his pleading—an attempt he makes to avoid application of the anti-SLAPP statute. Moreover, according to his company's website, Dr. Holt has risen to prominence by promoting "dignity" in government and public participation. (*See, e.g.,* Davidson Ex. 10.) Communications about Dr. Holt's demeaning comment concerning a ULPDX employee undermine his very public persona. As discussed below, authoritative and persuasive precedence hold that this further supports applying the anti-SLAPP statute.

Page 1 – ANTI-SLAPP MOTION

**A.**     **Jane Doe attends a community meeting as ULPDX's representative. Holt makes a harassing and demeaning comment about her in front of everyone there. Jane Doe reports that harassment to Prosper Portland—a public body with which Holt contracts.**

Activated as an affiliate of the National Urban League in 1945, ULPDX is one of the oldest civil rights and service organizations in the Greater Portland area. (Harmon Johnson Decl., ¶ 3.) The mission of the Urban League of Portland is to empower African Americans and others to achieve equality in education, employment, health, economic security, and quality of life. (Harmon Johnson Decl., ¶ 4.) Ms. Harmon Johnson is the President and CEO of ULPDX, and has been for approximately seven years. (Harmon Johnson Decl., ¶ 2.)

ULPDX and its employees partner with a variety of organizations in Oregon to further social and economic efforts to enhance the local community. (Harmon Johnson Decl., ¶ 5.) In January 2020, one ULPDX employee, Jane Doe,[1] served as a nominated member of a community-based committee initiated by Prosper Portland.[2] (Jane Doe Decl., ¶ 3.) Plaintiff Holt was a facilitator of that committee. (Jane Doe Decl., ¶ 6 & Ex. 1 at  4; Harmon Johnson Decl., ¶ 6.)

On January 9, 2020, Ms. Doe attended a meeting related to the committee. At that time, she was six months pregnant and showing. (Jane Doe Decl., ¶ 4.) During the committee meeting, Ms. Doe encountered multiple harassing comments related to her pregnancy. Plaintiff made one such harassing comment about Ms. Doe in front of the committee and public attendees. (Jane Doe Decl., ¶ 5.) Specifically, Plaintiff stated that Ms. Doe had broken the hearts of the men in the room—that is, her pregnancy meant that they would not have a shot at having sex with her. (Jane Doe Decl., ¶ 6 & Ex. 1 at  4.)

---

[1] Due to the sensitive nature of the allegations at the heart of the Complaint, and the media attention that this lawsuit has attracted, the identity of Jane Doe is kept confidential for purposes of this motion.

[2] Prosper Portland is an economic and urban development agency for the City of Portland. (*See* https://prosperportland.us/about-us/)

Page 2 – ANTI-SLAPP MOTION

Rightfully upset by Plaintiff's misogynist exertion of power and the resulting comments from others (men) present at the meeting, on January 14, 2020, Ms. Doe submitted the following written Complaint to a Human Resources representative at Prosper Portland:

Hello Selena,

Hope this message finds you well. I am emailing with intentions to make a complaint (I see you listed as a contractor for HR to prosper) regarding my experience at a recent Williams and Russell community open house, on January 9th, 2020, in which Prosper Portland is highlighted as a lead organizer. I am currently a nominated member of the Williams and Russell project working group and have dedicated two years of volunteer time to this project. Not only have I volunteered time and participated in outreach events, I also host the community engagement committee meeting at the Urban League of Portland (my workplace).

During the community event last week, I experienced multiple negative encounters that involved a facilitator of the project, members of the working group committee, and one of the project managers—all whom identify as male. You see, I am 6 months pregnant and was made to feel very uncomfortable by comments made during the event.

1. A facilitator of the event mentioned that I am "breaking hearts" insinuating that I am disappointing men who may have been attracted to me before I became so visibly pregnant.
2. A project working group committee member approached me very closely, pointed at my stomach, and said" whoa, what is that!". I replied that I am pregnant and he responded saying, "oh so that's why you have missed so many meetings, I know what you have been up to and it looks like a lot of baby weight is going to your hips."
   a. I want to highlight here that I regularly attend most meetings and none of my absences are due to my pregnancy. I also do not feel as if I am obligated to announce my pregnancy to anyone within the working group
3. A project manager and another committee member on the project also approached me and asked why I did not tell them that I am pregnant

All of these experiences negatively impacted me during this event. While the goal of the open house was to get community input on how we can develop land, I was constantly put in awkward situations in which I had to explain being pregnant and felt as if the way my body looked was the topic of discussion instead.

I am requesting to have this complaint on record and additionally an anti-harassment email being sent to the Russell and Williams Project working group members, facilitators, project managers, etc. I would like the notification to be general and not to highlight myself as the victim due the fact that I am the only person on the committee who is visibly pregnant at this time and also to avoid victim shaming that often occurs in this instance (especially within small

communities). Just some sort of formal notice that gender biased opinions and body shaming in not acceptable at any time within the group or towards the community at large in attendance at events.

Please contact me with any questions or concerns. If you are not the correct person to reach out to, please respond with the contact info to who I can reach out to.

Thank you kindly,

(Jane Doe Decl., ¶ 6 & Ex. 1 at 4-5.)

On January 16, 2020, Prosper Portland's Director of Human Resources[3] confirmed that he received the Complaint by stating:

My name is Sean Murray and I am the Human Resources Director for Prosper Portland. Selena forwarded your email to me regarding your experience at the committee meeting, which based on your email we find very concerning. Please know that Lisa Abuaf, Director of Development and Investment, and I are looking into the matter and plan to follow up with you. In the meantime, please feel free to contact me or Lisa if you have any questions or new concerns.

---

[3] Mr. Murray also was a ULPDX board member. Plaintiffs have sued him, too.

Page 3 – ANTI-SLAPP MOTION

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

decided to resign from the committee. (Jane Doe Decl., ¶ 8.)

On April 17, 2020—approximately one month after Ms. Doe resigned from the committee and approximately three months after she made the Complaint—Prosper Portland's Director of Human Resources confirmed that the agency had met with the committee facilitator (Dr. Holt) and a Prosper Portland employee:

From: Murray, Sean
Sent: Friday, April 17, 2020 5:22 PM
To: ███████@ulpdx.org
Cc: Abuaf, Lisa; Nkenge Harmon Johnson; Wilson, Nancy
Subject: RE: confidential issue

Hello Ms. ███,

I hope this email finds you well during our current state of condition. In follow up to my meeting last week with Ms. Harmon-Johnson, I wanted to offer my sincere apology on behalf of Prosper Portland for the inappropriate comments you experienced while attending the Hill Block committee meeting and what appears to be our inaction as agency in handling the matter. As I conveyed to Ms. Harmon-Johnson, the agency did meet with the committee facilitator and our employee to revisit Prosper Portland's anti-harassment policy, however, we fell short in getting the new code of conduct out to our committee groups in a timely manner.

(Jane Doe Decl., ¶ 9 & Ex. 1 at 3.)

Prosper Portland also confirmed to Ms. Harmon Johnson that Plaintiff had been made aware of the Complaint by Ms. Doe. (Harmon Johnson Decl., ¶ 8.) Ms. Harmon Johnson decided that the Urban League of Portland would not continue to participate in any programming where Holt would also be involved. Moreover, Ms. Harmon Johnson previously had banned Holt from the ULPDX office due to prior misbehavior directed at a ULPDX employee, though Holt had not been told of the ban because he had not attempted to return. (Harmon Johnson Decl., ¶ 9.)

**B.**     **National Urban League informs ULPDX that the National Urban League president would be speaking on a panel with Dr. Holt relevant to the expansion of I-5. Ms. Harmon Johnson informs the president of Jane Doe's complaint against Dr. Holt.**

Dr. Holt is a for-profit consultant and owner of Plaintiff Try Excellence LLC. He avers that he is an "an active member in a number of community organizations, committees, and projects" and a person who has held several "positions of leadership within religious

Page 4 – ANTI-SLAPP MOTION

organizations." (*See* Compl., ¶¶ 16-17.)[4] Most recently, he was hired by the Oregon Department of Transportation ("ODOT") and its partners in an effort to sway public opinion in the Black community about a major highway project. (Compl., ¶ 20; Harmon Johnson Decl., ¶ 10.) For several years, ODOT has planned to expand Highway I-5 through central Portland (the "Expansion"). (Harmon Johnson Decl., ¶ 11.) The Expansion is set to extend through the Rose Quarter and Albina neighborhoods, including a historically Black neighborhood known as Lower Albina. (Harmon Johnson Decl., ¶ 11.)

Many community leaders favor a plan to cap the highway in the Rose Quarter and Lower Albina. Others prefer a long-term project that adjusts the path of the highway around Lower Albina, thereby improving air quality and creating buildable land to support more long-term economic opportunity in the Lower Albina community. (Harmon Johnson Decl., ¶ 12.) In contrast to both, ODOT favors a shorter and cheaper highway expansion project that cuts straight through Lower Albina and displaces the historic Harriet Tubman Middle School. (*Id.*) Both the Mayor of Portland and the Governor of Oregon have made public statements against ODOT's proposed project, instead choosing to follow the local community's lead on the best way to accomplish the Expansion. (*See* Harmon Johnson Decl., Ex. 2 at 1-2 and Albina Vision Trust Article linked therein). ULPDX also is committed to following the community's lead on the best way to accomplish the Expansion. (Harmon Johnson Decl., ¶ 13.) In the past, the organization and its affiliates have hosted listening sessions for ODOT and have shared surveys to poll community members—all in an effort to help share information from both sides and let the community truly decide the best interests for the future. (*Id.*)

Facing growing opposition to its proposed Expansion plan, ODOT hired Plaintiffs to further its efforts to sway the local community. (*See* Harmon Johnson Decl., ¶ 10.) One public event regarding the Expansion was scheduled for March 25, 2022, when local contractors planned to host a virtual community town hall. (Harmon Johnson Decl., ¶ 14.) Both Marc Morial, President and CEO of National Urban League, Inc., and Holt were set to speak at the

---

[4] Please see Section III.A, below, for a discussion of Plaintiff's presence in the public eye.

Page 5 – ANTI-SLAPP MOTION

event. (*Id.*, Ex. 2.) Upon learning of Holt's involvement, Ms. Harmon Johnson sent the following message to President Morial and Tina Pizzimenti, his Chief of Staff, to address Holt's participation at the virtual event:

From: Nkenge Harmon Johnson <NHJ@ulpdx.org>
Sent: Monday, March 7, 2022 4:58 PM
To: Marc Morial <mmorial@nul.org>
Cc: Tina Pizzimenti <tpizzimenti@nul.org>
Subject: Re: March 25th event

Hi Marc. Be advised that the moderator for this event is someone who is excluded from the ULPDX office. Among other things, we have filed a complaint against him for harassing a member of my team.

Thanks for the note, Tina.

(Harmon Johnson Decl., ¶ 15 & Ex. 2.) Mr. Morial did not participate in the event. (Harmon Johnson Decl., ¶ 16; Compl., ¶ 24.)

As the record shows, a Complaint of harassment *was filed* against Plaintiff Holt and arises from his consulting and business dealings through Plaintiff Try Excellence, Inc. (*See* Jane Doe Decl., ¶ 6 & Ex. 1.) Ms. Harmon Johnson's statement to the national Urban League, that there was a harassment Complaint, therefore was true.

II.    **PLAINTIFFS' CLAIMS ARISE FROM CONDUCT PROTECTED BY ORS 31.150(2). ACCORDINGLY, ANY OR ALL CLAIMS ARE SUBJECT TO DISMISSAL IF PLAINTIFFS FAIL TO SUPPORT THEM LEGALLY AND FACTUALLY.**

Oregon enacted an anti-SLAPP statute,[5] ORS 31.150-.155, in 2001. The legislature amended the statute in 2009 to ensure that it would be "liberally construed in favor of the exercise of the rights of expression described [in the statute]." ORS 31.152(4), *codified by* 2009 c.449 § 3. The anti-SLAPP statute provides a procedure to weed out questionable litigation arising from speech or petition. The purpose of the procedure is to prevent the chilling of speech through the expense of litigation and discovery. *Tokarski v. Wildfang*, 313 Or. App. 19, 21-22

---

[5] SLAPP stands for Strategic Lawsuit Against Public Participation.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

(2021), *rev. denied*, 368 Or. 788 (Nov. 24, 2021). Although the anti-SLAPP statute is a state law procedure, it protects a substantive right and therefore applies in federal court to the extent it does not conflict with the Federal Rules. *Makaeff v. Trump. U.*, 715 F.3d 254, 261 (9th Cir. 2013), *reh'g en banc denied*, 736 F.3d 1180 (Nov. 27, 2013) (declining to revisit Ninth Circuit opinions holding that anti-SLAPP statutes apply in federal court).

There are two prongs to the anti-SLAPP statute. Under the first prong, the movant (here, defendants) "has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct" listed in ORS 31.150(2). ORS 31.150(3). If a movant satisfies that initial burden, then the burden shifts to the non-movant (here, plaintiffs) "to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." ORS 31.150(3). These standards are discussed in greater detail below.

## III. PRONG 1: MOVANTS SATISFY THEIR BURDEN OF SHOWING THAT PLAINTIFFS' CLAIMS ARISE OUT OF A STATEMENT, DOCUMENT, OR CONDUCT LISTED IN ORS 31.150(2).

### A. The statements vaguely alleged in the Complaint concerned a person in the public eye. They comprise conduct in furtherance of the constitutional right of free speech in connection with a public issue or issue of public interest, within the meaning of ORS 31.150(2)(d).

The Complaint makes clear that Plaintiff Holt is a prominent figure in Portland's Black community—particularly with respect to redevelopment of the Albina neighborhood, and the expansion of I-5 where it passes through the Rose Quarter. (*See* Compl., ¶¶ 16, 17, 20.) Indeed, both Prosper Portland, the City of Portland's economic and urban development agency, and ODOT, have engaged Mr. Holt in connection with those initiatives. (Harmon Johnson Decl., ¶ 10.)

Media and internet materials further demonstrate that Plaintiff is in the public eye:

- Plaintiff is listed on the City of Portland's website as Chair of the N/NE Oversight

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Committee. (Davidson Ex. 3, *available at* https://www.portland.gov/phb/nne-oversight/about/committee-members.)

- The *Portland Mercury* featured Plaintiff in an article about the City's $20 million effort to address gentrification. (Davidson Ex. 4, *available at* https://www.portlandmercury.com/politics/2015/03/04/15109659/a-leap-of-faith.)

- In 2021, the *Oregonian* described Plaintiff as a "civil rights leader" who had been hired by the City of Gresham to speak with the police department about the increasing population shift from North/Northeast Portland to the Gresham area. (Davidson Ex. 5 at 2, https://www.oregonlive.com/news/2021/02/gresham-police-chief-created-hostile-work-environment-report.html.)

- Plaintiffs advertise their services through www.alignable.com. There, Holt states: "I have been providing these services to the non profit world since 1984 and found myself being asked by many leaders, educators and business people for assistance." (Davidson Ex. 6 at 2, *available at* https://www.alignable.com/vancouver-wa/try-excellence-llc.) Holt further touts his connections to public entities: "I have and am contracted with the City of Gresham, City of Portland (Police Bureau, Fire Bureau, Office of Equity and Human Rights, Bureau of Internal Business Services, Office of Management and Finance, Leadership Development Program)." (*Id* at 5.)

- Holt characterized the involvement of Try Excellence, LLC as facilitator of ODOT's Historic Albina Advisory Board as "a great opportunity to help influence the potential for growth and change in this area." (Davidson Ex. 7 at 2, https://dailyupdate.transportation.org/Pages/StateDotNewsDetail.aspx?MessageId=85898.) Indeed, ODOT permitted Try Excellence, LLC to select the members of the Board through a public application process. (*Id.* at 1.)

- Plaintiff has given numerous interviews, and been mentioned numerous times, in connection with the Albina area, Historic Black Portland, and the I-5 corridor

Page 8 – ANTI-SLAPP MOTION

project. (Davidson Ex. 8.)

As discussed below, Plaintiff's presence in the public eye—indeed, his intentional seeking out of notoriety—means that the speech conduct alleged in the Complaint comprise speech on a matter of public interest.

1.    *Sipple v. Foundation for Nat. Progress* **supports applying ORS 31.150(2)(d).**

Speech concerning harassment of a ULPDX employee by a pastor in the public eye in Portland's Black community, whom a public agency (Prosper Portland) hired to facilitate meetings within that community as part of a crucial conversation about that community's future, comprises "conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest." ORS 31.150(2)(d). Indeed, in *Sipple v. Foundation for Nat. Progress*, 71 Cal. App. 4th 226, 239 (Cal. Ct. App. 1999), the California Court of Appeal held that otherwise private statements about domestic violence committed by a political consultant fell under California's equivalent of ORS 31.150(2)(d), because the consultant was in the public eye in relevant circles.[6] *Sipple* is authoritative because it was decided prior to Oregon's enactment of ORS 31.150; the Oregon legislature intended pre-2001 cases to be authoritative. *Deep Photonics Corp. v. LaChapelle*, 262 Or. App. 533, 543 n.5 (2016).[7]

The California Court of Appeal also found it highly relevant that the accusations of

---

[6] Although the statements in *Sipple* were published in a magazine, there is no indication in *Sipple*, nor in subsequent cases, that widespread dissemination is required where someone in the public eye is the subject of the speech. In any event, Plaintiffs here appear to allege widespread dissemination supporting $7,000,000 of reputational injury.

[7] California cases subsequent to *Sipple* formulated three "commonly articulated definitions of statements made in connection with a public issue focus on whether (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; and (3) whether the statement or activity precipitating the claim involved a topic of widespread public interest." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (Cal. Ct. App. 2004).

Page 9 – ANTI-SLAPP MOTION

domestic violence were leveled against a political consultant who associated himself with morality campaigns. *Sipple*, 71 Cal. App. 4th at 239. Here, Plaintiff holds himself, and the church he leads, out as attempting to bring "spiritual life, beauty, healing, hope, mental health & wellness, wisdom, safety, integrity, equity, morality, unity, prosperity and success" through various partnerships, including with the City of Portland. (Davidson Ex. 9, https://www.kingdomnationchurch.org/partnerships/.) Indeed, as Plaintiff notes, "Persons holding positions of leadership within religious organizations are expected to uphold high ethical and moral standards." (Compl., ¶ 16(b).) Comments bearing on whether Plaintiff meets those criteria, especially when he is otherwise in the public eye, address an issue of public interest.

Moreover, on their website, Plaintiffs describe Try Excellence as "a consulting firm restoring human dignity." (Davidson Ex. 10, https://www.tryxcellence.com/.) They proclaim:

> "Everyone desires to be appreciated, recognized and valued. It is
> inate within humanity. Human dignity is essential for the
> development of a healthy and balanced society. People thrive when
> they are safe to "be..."
>
> Try Excellence is leading the way in the restoration of human
> dignity within corporations, government agencies, and businesses.
> We provide innovative solutions that establish new support
> systems and approaches to remove historic barriers that ostracize
> and isolate.
>
> Our goal is to help organizations organically create a more
> productive and human-centered culture.
>
> Our work is to create professional environments and communities
> where human brilliance is valued and celebrated.

Page 10 – ANTI-SLAPP MOTION

> Our tools, when applied, lead to collaborative functionality,
>
> increased morale, an inclusive work climate and greater
>
> productivity.
>
> Our guiding principles are truth, hope, stewardship, order, and
>
> excellence."

(*Id.*, *available at* https://www.tryxcellence.com/.) Humiliating a pregnant ULPDX employee—a member of a committee whose meetings Plaintiffs were facilitating on behalf of a public agency— is the opposite of these professed goals. As *Sipple* illustrates, that is an additional reason for finding that the speech alleged in the Complaint, regarding someone who makes his living by convincing public agencies and others to work with him based on his purported moral suasion within Portland's Black community, was made in connection with an issue of public interest.

### 2. Additional persuasive California authorities support applying ORS 31.150(2)(d).

Since the authoritative 1999 opinion in *Sipple*, numerous persuasive[8] California opinions have reaffirmed that statements about someone in the public eye satisfy the public interest requirement of the identically worded[9] California equivalent of ORS 31.150(2)(d). *See, e.g., Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (Cal. Ct. App. 2004) (same); *Commonwealth Energy Corp. v. Inv. Data Exch., Inc.*, 110 Cal. App. 4th 26, 33 (Cal. Ct. App. 2003) (same).

---

[8] *See Deep Photonics Corp.*, 262 Or. App. at 543 n.5 (noting that California cases after enactment of ORS 31.150-.155 can be persuasive).

[9] *Compare* Cal. Civ. Proc. C. § 425.16(e)(4) ("any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest") *with* ORS 31.150(2)(d) ("any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest").

Page 11 – ANTI-SLAPP MOTION

**B.** **Plaintiffs' allegations that the (accurate) accusation of harassment has circulated widely in the community, to the point of causing $7,000,000 in damages, is further evidence of public interest within the meaning of ORS 31.150(2)(d).**

Plaintiffs repeatedly allege that defendants' accusations have circulated throughout Portland's Black community. (*See* Compl., ¶¶ 16-18, 29, 56.) This demonstrates that the allegations address a matter of public interest. As Judge Beckerman recently noted, consistent with the admonition of ORS 31.152(4) that the anti-SLAPP statute be "liberally construed in favor of the exercise of the rights of expression," "the term 'public interest' includes any issues in which the public is interested and the issue need not be significant to be protected" under the anti-SLAPP statute. *Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 908 (D. Or. 2020) (some alterations and quotation marks, and all citations, omitted) (applying ORS 31.150). Indeed, "[s]peech deals with matters of public concern when it can fairly be considered as relating to any matter of political, social or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011); Roe v. City & County of San Francisco, 109 F.3d 578, 585 (9th Cir. 1997) ("To deserve First Amendment protection, it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested."). The anti-SLAPP statute applies for this additional reason.

**IV.** **PRONG 2: PLAINTIFFS CANNOT PRESENT SUBSTANTIAL EVIDENCE TO SUPPORT THEIR CLAIMS.**

Because Movants have made a prima facie showing that the anti-SLAPP statute applies, the burden shifts to Plaintiffs to establish that there is a probability they will prevail by presenting substantial evidence to support a prima facie case. ORS 31.150(3). "Substantial evidence means enough evidence from which a reasonable trier of fact could find that the plaintiff has met his burden of production." *Dossett*, 472 F. Supp. 3d at 906 (citing *Handy v. Lane Cty.*, 360 Or. 605, 623 (2016)). Plaintiffs must adduce admissible evidence to carry their

Page 12 – ANTI-SLAPP MOTION

burden. *Young v. Davis*, 259 Or. App. 497, 508 (2013).

The burden is entirely on Plaintiffs to show a prima facie case. Nevertheless, to avoid any argument that Plaintiffs lacked notice of defenses, Movants present here two obstacles that Plaintiffs must overcome to survive this motion—in addition to carrying their burden of production.

A.     **ULPDX and Harmon Johnson enjoy a qualified privilege that Plaintiffs cannot rebut.**

Because Mr. Holt's harassment of an Urban League employee is a matter of mutual concern to both ULPDX and the National Urban League, any communications between those two entities, including their personnel, are subject to a qualified privilege. *DeLong v. Yu Enters., Inc.*, 334 Or. 166, 170 (2002). To satisfy their burden under the anti-SLAPP statute, Plaintiffs must present evidence of actual malice. *Id.*; *Bank of Ore. v. Indep. News, Inc.*, 598 Or. 434, 437 (1985); UCJI 53A.07. That is, they must show that Movants

> "knew that the communication was false or lacked reasonable grounds to believe it was true; made the communication primarily for a purpose other than that for which the privilege exists; made the communication to a person not reasonably believed to be necessary to accomplish the purpose of the privilege; or included defamatory remarks that the defendant did not reasonably believe were necessary to accomplish the purpose of the privilege."

UCJI 53A.08. Plaintiffs will be unable to make a showing on any of these elements.

B.     **Because Holt is a public figure, he must show that Movants made knowingly or recklessly false statements, and that he has suffered actual damages as a result of the purportedly false statements.**

Where a defamation plaintiff is a public figure, that plaintiff must prove through clear and convincing evidence that the defendant either knew the communication was false, or recklessly disregarded whether it was false, and that the communication caused damages. UCJI

Page 13 – ANTI-SLAPP MOTION

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

53A.02; *see Indep. News*, 298 Or. at 441-43 (discussing limited public figure standard and collecting authorities). To satisfy the clear-and-convincing standard in the context of an anti-SLAPP motion, a plaintiff must demonstrate "a probability that he or she can produce such clear and convincing evidence." *Manzari v. Associated Newspapers, Ltd.*, 830 F.3d 881, 889 (9th Cir. 2016) (applying California anti-SLAPP statute).

Although he might not be a household name, Plaintiff Holt's own allegations support that he is a prominent member of Portland's Black community who serves on multiple boards, holds significant positions in local congregations, is an officer of a nationwide diversity, equity, and inclusion organization, and is the face of local government's and ODOT's engagement efforts in the Albina/Rose Quarter area. So do Exhibits 3 through 10 submitted in support of this motion. (*See* Section III.B, above.) The Court thus should find that he is a public figure for purposes of Portland's Black community and the Expansion. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (noting that public figures are those that, because they have thrust themselves to the forefront of particular public controversies, they invite attention and comment); *Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1089 (D. Haw. 2007) (holding that prominent surfer was a public figure within surfing community, even if not for all purposes, and that therefore his defamation claim was subject to heightened First Amendment standard); *Celle v. Filipino Reporter Ents. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) (affirming district court finding that "well known radio commentator within the Metropolitan Filipino-American community" was a public figure).

For these reasons, Plaintiffs must present evidence of knowing or reckless falsity, and damages that the allegedly defamatory statements caused.

C.  **Holt's public figure status is imputed to his company, plaintiff Try Excellence, LLC.**

Although Holt and Try Excellence, LLC sue as separate plaintiffs, Holt's allegations clearly state that Try Excellence's economic well-being is inextricable from Holt's reputation. (Compl., ¶ 13.) The LLC thus independently must satisfy its *prima facie* burden. That includes,

Page 14 – ANTI-SLAPP MOTION

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

at a minimum, the showings that Holt himself must make.

## V.   CONCLUSION

Movants respectfully request that the Court find that the anti-SLAPP statute applies and requires dismissal without prejudice.

DATED this 5th day of August, 2022.

SNELL & WILMER L.L.P.

/s/ Clifford S. Davidson
Clifford S Davidson, OSB No. 125378
Marsha Cotton, *pro hac vice*

Attorneys for Defendants The Urban League of Portland, Inc., and Nkenge Harmon Johnson (erroneously sued as "Nkenge Harmon-Johnson"), Karis Stoudamire-Phillips, James Mason, and Sean Murray

4874-8824-8109

Page 15 – ANTI-SLAPP MOTION

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800