UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN HOLT, an individual, and TRY EXCELLENCE, LLC, an Oregon Domestic limited liability company,

        Plaintiffs,

    v.

THE URBAN LEAGUE OF PORTLAND, INC., an Oregon Domestic non-profit corporation; NKENGE HARMON-JOHNSON, individually and as President and CEO of THE URBAN LEAGUE OF PORTLAND, INC.; MICHAEL LEWELLEN, individually and as Board Chairman of THE URBAN LEAGUE OF PORTLAND, INC.; KARIS STOUDAMIRE-PHILLIPS, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; JAMES MASON, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; SEAN MURRAY, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; NATIONAL URBAN LEAGUE, INC., a New York Domestic not-for-profit corporation; MARC MORIAL, individually and as President and CEO of NATIONAL URBAN LEAGUE, INC.; and TINA PIZZIMENTI, individually and as the Chief of Staff to CEO Defendant Morial of Defendant NATIONAL URBAN LEAGUE,

        Defendants.

Case No. 3:22-cv-00837-YY

FINDINGS AND RECOMMENDATIONS

1 – FINDINGS AND RECOMMENDATIONS

Plaintiff Steven Holt, both individually and through his ownership and operation of Try Excellence, LLC, has brought this suit alleging defamation, false light invasion of privacy, and intentional inference with economic relations against defendants Urban League of Portland, Inc. ("ULPDX"), its president and CEO Nkenge Harmon Johnson[1], and its board members Michael Lewellen, Karis Stoudamire-Phillips, Dr. James Mason, and Sean Murray (collectively "Portland Defendants"), as well as National Urban League, Inc., its president and CEO Marc Morial, and Morial's chief of staff, Tina Pizzimenti (collectively "New York Defendants"). Compl. ¶¶ 1–10, 32–53, ECF 1-1. Currently pending is the New York Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. ECF 55. Because plaintiff's complaint fails to specifically allege that any of the New York Defendants engaged in tortious conduct directed at Oregon, the motion to dismiss should be granted.

I.   Background

Plaintiff is involved in "public speaking and other community engagement events" at which defendants have also been "participants, speakers, and facilitators." Compl. ¶ 12, ECF 1-1. Plaintiff alleges that defendants "have falsely claimed that there are allegations of 'harassment' against [him] and that if he were to participate in certain events, there would be 'demonstrations' against his company." *Id.* ¶ 14. Plaintiff alleges the following false statements were made:

- In March 2022, during a phone call with another individual not party to this suit, plaintiff was asked "to explain the harassment situation with" ULPDX and National Urban League. *Id.* ¶ 20 (internal quotation marks omitted). Plaintiff alleges that this was the first he had heard of the allegation against him. *Id.*
- Defendant Harmon Johnson "communicated to" defendant Morial at National Urban League "that not only was [plaintiff] accused of harassment, but additionally that [plaintiff] should not be allowed on the premises of [ULPDX]." *Id.* ¶¶ 22–23.

---

[1] The caption of the complaint erroneously hyphenated Harmon Johnson's last name. *See* Mot. Strike 15, ECF 35. These Findings and Recommendations use Harmon Johnson's proper name in the body, but maintains her mis-hyphenated name in the caption.

2 – FINDINGS AND RECOMMENDATIONS

- On March 6, 2022, plaintiff "was made aware . . . in an email from [d]efendant Pizzimenti" that defendant Morial had withdrawn from an upcoming event at which plaintiff and Morial were scheduled to appear. *Id.* ¶¶ 21, 23–24. Pizzimenti told plaintiff that the harassment complaint against plaintiff was the reason Morial had pulled out of the event. *Id.* ¶ 24.
- Harmon Johnson "communicated . . . to event coordinators that should the event continue with [plaintiff's] involvement," ULPDX "would openly protest the event." *Id.* ¶ 24.

Plaintiff claims defendants' allegedly false statements "continue to circulate and spread throughout [his] professional and personal communities," several of his speaking engagements or other events have been cancelled, and his reputation has been irreparably damaged among these communities. *Id.* ¶¶ 15, 25–26

## II.    Legal Standard—Rule 12(b)(2)

When faced with a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Where the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Id.* (quoting *Scher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). A plaintiff cannot rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. *Id.* "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (citing *Schwarzenegger*, 374 F.3d at 800).

## III.    Personal Jurisdiction Analysis

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot*, 780 F.3d at 1211 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125

3 – FINDINGS AND RECOMMENDATIONS

(2014)); *see* FED. R. CIV. P. 4(k)(1)(A). Oregon's long-arm statute is co-extensive with constitutional standards, and thus this court need only determine whether its exercise of personal jurisdiction is consistent with constitutional due process standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing OR. R. CIV. P. 4L); *Swank v. Terex Utilities, Inc.*, 274 Or. App. 47, 57 (2015).

Constitutional due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.' " *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017)). That focus led to the recognition of two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))

**A.     General Personal Jurisdiction**

General jurisdiction extends to "any and all claims" brought against a defendant, but a court may exercise general jurisdiction only when a defendant is "essentially at home" in the forum state. *Ford Motor*, 141 S. Ct. at 1024 (citation omitted). Individuals are subject to general jurisdiction in their place of domicile. *Id.* (citing *Daimler AG*, 571 U.S. at 137). A corporation is subject to general jurisdiction in its place of incorporation and its principal place of business, but a corporation may be "at home" somewhere else in an exceptional case. *Id.* (citing *Daimler*, 571 U.S. at 139 n.19).

There is no general jurisdiction over the New York Defendants here. Plaintiff alleges that National Urban League is a "New York State registered domestic non-for-profit corporation with its primary place of business" in New York City, and that both Morial and Pizzimenti "operat[e] primarily" out of the National Urban League office in New York. Compl. ¶ 8–10, ECF 1-1. Thus, general jurisdiction exists in New York, not Oregon, for these defendants. *Ford Motor*, 141 S. Ct. at 1024; *Menken v. Emm*, 503 F.3d 1050, 1056-57 (9th Cir. 2007) (holding general jurisdiction exists when "a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes").

Plaintiff asserts that National Urban League should be subject to general jurisdiction in this district because National Urban League and its local affiliate, ULPDX, are alter egos. Resp. 6, ECF 58. Generally, a parent-subsidiary relationship alone does not justify imputing one entity's forum contacts with another for personal jurisdiction purposes. *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001). But contacts can be imputed "if the subsidiary is acting as the parent company's alter ego, so as to justify disregard of the corporate entity." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). Alter ego liability exists where (1) the parent and subsidiary can no longer be considered separate entities because their ownership and interests have essentially unified, and (2) failure to recognize this merging of identities would cause fraud or injustice. *Id.* To satisfy the alter ego test, a plaintiff must show the parent exercised "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks omitted).

5 – FINDINGS AND RECOMMENDATIONS

Plaintiff claims the two organizations are "both . . . non-profits that operate under the same goals and same name," and points out that National Urban League's "website even states that 'We accomplish our [company] mission through local groups and affiliates.' " Resp. 6, ECF 58 (emphasis omitted). These allegations fall far short of suggesting that National Urban League exercised the "pervasive control" over ULPDX necessary to find the two entities are alter egos for jurisdictional purposes. *See Cai v. DaimlerChrysler AG*, 480 F. Supp. 2d 1245, 1252 (D. Or. 2007) (holding communications between parent and subsidiary during employment negotiations with the plaintiff were insufficient to establish alter ego for jurisdiction).

For similar reasons, plaintiff's assertions that Morial and Pizzimenti should be subjected to general jurisdiction in Oregon because of their association with National Urban League is without merit. An entity's contacts with the forum are not imputed to its employees; rather, personal jurisdiction for each defendant must rest on their individual contacts with the forum state. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020); *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.") (simplified). There is nothing alleged in the complaint suggesting that Morial or Pizzimenti are subject to general jurisdiction in Oregon.

### B.      Specific Personal Jurisdiction

In the alternative, plaintiff asserts that specific jurisdiction exists in Oregon over National Urban League and Morial, though plaintiff somewhat confusingly concedes that there is no specific personal jurisdiction over Pizzimenti. Resp. 10, ECF 58. Specific jurisdiction applies to a broader class of defendants than general jurisdiction, but only for a "narrower class of claims." *Ford Motor*, 141 S. Ct. at 1024. Specific jurisdiction over a nonresident defendant depends on

the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

The Ninth Circuit employs a three-prong test for analyzing specific jurisdiction. First, the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Glob. Commodities*, 972 F.3d at 1107 (quoting *Schwarzenegger*, 374 F.3d at 802). Second, the claim must arise out of or relate to the defendant's forum-related activities, though a strict causal relationship is not required. *Id.*; *Ford Motor*, 141 S. Ct. at 1026. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Global Commodities*, 972 F.3d at 1107.

Under the first prong, "purposeful availment" and "purposeful direction" are distinct concepts; purposeful availment is more applicable to contract claims, while purposeful direction is more useful for tort claims. *Id.* The dividing line though is not a rigid one—at bottom, both concepts ask whether the defendant has engaged in sufficient voluntary activities with the forum such that it "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (simplified).

Plaintiff's claims for defamation, false light invasion of privacy, and intentional interference with economic relations all sound in tort, and thus the Ninth Circuit's three-part "effects" test for purposeful direction applies. *Picot*, 780 F.3d at 1213–14 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "Under this test, a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' " *Id.* at 1214

7 – FINDINGS AND RECOMMENDATIONS

(quoting *Schwarzenegger*, 374 F.3d at 803). What matters for the effects test is the defendant's contacts with the forum state itself, not the contacts the defendant has with people who reside there. *Id.* (citing *Walden*, 571 U.S. at 285). The "plaintiff cannot be the only link between the defendant and the forum. Rather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285.

Here, the complaint alleges no facts that support exercising specific personal jurisdiction over any of the New York Defendants. Plaintiff vaguely alleges that he learned of the "harassment situation" with ULPDX through a phone call he had with an unidentified third party in March of 2022. Compl. ¶ 20, ECF 1-1. Plaintiff may be referring to Jeff Moreland, who is identified as a person to whom one of the New York Defendants or Portland Defendants may have made a statement regarding the harassment complaint. *See id.* ¶ 15. In any event, during this phone call, plaintiff states that the third party "asked [him] to explain the 'harassment' situation" with ULPDX and the National Urban League." *Id.* But there is no factual allegation regarding how this third party learned about the "harassment" situation, and thus it is pure speculation as to whether any of the defendants made a statement to this individual. *See Soule v. Curry Health Dist.*, No. 1:14-CV-1381-CL, 2015 WL 4488162, at *2 (D. Or. July 22, 2015) (dismissing claims against individual defendants where defamation claims vaguely asserted that "[Curry Health District] made defamatory statements in bad faith and with malicious purpose about [the plaintiff] to Rush Surgery Center after the surgery center offered [the plaintiff] a job"); *Poppell v. City of San Diego,* 149 F.3d 951, 954 (9th Cir. 1998) (explaining court-drawn inferences cannot "be mere speculation, intuition or guessing," as the "key to a logical inference is the

8 – FINDINGS AND RECOMMENDATIONS

reasonable probability that the conclusion flows from the evidentiary datum because of past experiences in human affairs").

And there are other problems, too. Plaintiff does not allege which state Jeff Moreland or anyone else who allegedly heard about the "harassment situation" is from so that the court can analyze whether a yet-to-identified defendant was "spreading rumors" in Oregon or some other place. *See Burri L. PA v. Skurla*, 35 F.4th 1207, 1214–15 (9th Cir. 2022) (finding personal jurisdiction in Arizona where the defendant's "allegedly defamatory communications—including phone calls and written correspondence—were sent to Arizona, circulated within Arizona, and had an Arizona 'focus,' as they concerned [the plaintiff's] activities in Arizona."). Moreover, plaintiff alleges in the complaint that his business is incorporated in Oregon, but in defendants' Notice of Removal, they assert that plaintiff is a citizen of Washington, a fact that plaintiff does not seem to dispute. *See* Compl. ¶ 1, ECF 1-1; Not. Removal 5, ECF 1. That discrepancy muddles the analysis under the "effects" test as to whether defendants knew their actions would cause harm in Oregon. *See In re Boon Glob. Ltd.*, 923 F.3d at 652 (explaining that the plaintiff's "lack of clarity" in alleging the defendant's contacts with the forum state made it "difficult to assess a theory of liability . . . sufficient to exercise personal jurisdiction").

Plaintiff conceded in his briefing and at the hearing that he "cannot attribute any specific defamatory statements to" the New York Defendants because he has not "been granted discovery to know whether the Defendants repeated an accusation that amounts to defamation." Resp. 3, ECF 58. Plaintiff has not requested jurisdictional discovery against the New York Defendants to discover whether they have deeper ties to Oregon; instead, plaintiff seems to propose discovery from the New York Defendants to uncover facts sufficient to state a claim. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (denying jurisdictional discovery that "was based

9 – FINDINGS AND RECOMMENDATIONS

on little more than a hunch that it might yield jurisdictionally relevant facts"); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987) ("It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details, but you must have the outline of a claim at the beginning.").

Without any defamatory statement attributed to Morial or National Urban League, the only specifically alleged contact with Oregon is Morial's decision not to appear at an event that was to be held here. Compl. ¶ 24, ECF 1-1. But plaintiff fails to allege facts sufficient to connect Morial's scheduled appearance at the event, or his subsequent withdrawal from it, with the defamatory statements in the complaint.[2] *See Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction.").

## RECOMMENDATIONS

The New York Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (ECF 55) should be granted and plaintiff's claims against the New York Defendants should be dismissed without prejudice.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, March 03, 2023. If no objections are filed, the n the Findings and Recommendations will go under advisement on that date.

---

[2] It is not entirely clear the arrangement through which Morial and plaintiff had agreed or were otherwise "scheduled" to appear at the "Raimore Construction and Sundt Group 'Lunch and Learn' " event on March 25, 2022. Compl. ¶ 21, ECF 1-1. What is clear, however, is that plaintiff has failed to allege with sufficient particularity facts connecting Morial's withdrawal from the event to the defamatory statements at the heart of the complaint.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED February 17, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
