UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN HOLT, an individual, and TRY EXCELLENCE, LLC, an Oregon Domestic limited liability company,

        Plaintiffs,

    v.

THE URBAN LEAGUE OF PORTLAND, INC., an Oregon Domestic non-profit corporation; NKENGE HARMON-JOHNSON, individually and as President and CEO of THE URBAN LEAGUE OF PORTLAND, INC.; MICHAEL LEWELLEN, individually and as Board Chairman of THE URBAN LEAGUE OF PORTLAND, INC.; KARIS STOUDAMIRE-PHILLIPS, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; JAMES MASON, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; SEAN MURRAY, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; NATIONAL URBAN LEAGUE, INC., a New York Domestic not-for-profit corporation; MARC MORIAL, individually and as President and CEO of NATIONAL URBAN LEAGUE, INC.; and TINA PIZZIMENTI, individually and as the Chief of Staff to CEO Defendant Morial of Defendant NATIONAL URBAN LEAGUE,

        Defendants.

Case No. 3:22-cv-00837-YY

FINDINGS AND RECOMMENDATIONS

1 – FINDINGS AND RECOMMENDATIONS

**FINDINGS**

Plaintiff Steven Holt, both individually and through his ownership and operation of plaintiff Try Excellence, LLC,[1] has brought this suit alleging defamation, false light invasion of privacy, and intentional inference with economic relations against defendants Urban League of Portland, Inc. ("ULPDX"), its president and chief executive officer Nkenge Harmon Johnson,[2] and its board members Michael Lewellen, Karis Stoudamire-Phillips, Dr. James Mason, and Sean Murray (collectively "Board Member Defendants").[3] The court has subject matter jurisdiction over this case because Holt and Try Excellence, LLC, are citizens of Washington,[4] defendants are citizens of Oregon, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

There are currently three motions pending. First, defendants ULPDX and Harmon Johnson filed a special motion to strike under Oregon's anti-Strategic Lawsuit Against Public Participation ("SLAPP") statutes. ECF 35. The Board Member Defendants have joined the motion to strike and filed a separate memorandum addressing evidence and arguments specific to

---

[1] Although both plaintiff Holt and plaintiff Try Excellence, LLC are named in the complaint, the relevant facts underlying the alleged claims are identical and the legal analysis is the same for each plaintiff. Thus, these Findings and Recommendations use the singular "plaintiff" for clarity as a collective reference for both plaintiffs.

[2] Harmon Johnson was "erroneously sued as 'Nkenge Harmon-Johnson' " in the Complaint. Mot. Strike 15, ECF 35. Harmon Johnson's correct, unhyphenated name is used in these Findings and Recommendations.

[3] Plaintiff also sued the National Urban League, Inc., its president and chief executive officer Marc Morial, and Morial's chief of staff, Tina Pizzimenti (collectively "New York Defendants"). Compl. ¶¶ 1–10, 32–53, ECF 1-1. The New York Defendants were dismissed from this suit for lack of personal jurisdiction in a previous order. Findings and Recommendations (February 17, 2023), ECF 66, adopted by Order (March 9, 2023), ECF 68. For ease of reference, these Findings and Recommendations use "defendants" to refer collectively to defendants Harmon Johnson, ULPDX and the Board Member Defendants still remaining in this suit.

[4] "[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Try Excellence, LLC, has one owner, Holt, who is a citizen of Vancouver, Washington.

2 – FINDINGS AND RECOMMENDATIONS

them. *See* Joinder and Memo 2, ECF 39. As explained more fully below, because the statements at the heart of this dispute—that a ULPDX employee had lodged a harassment complaint about plaintiff and that plaintiff had been excluded from the ULPDX offices—were true, plaintiff's claims necessarily fail and defendants' anti-SLAPP motion to strike and for joinder should be granted.

The third pending motion is defendants' motion to strike plaintiff's supplemental memorandum and declaration. ECF 88. Because plaintiff's supplemental memorandum and declaration have no effect on the conclusion that plaintiff's claims are not actionable, the motion to strike should be denied as moot.

**I.      Background**

Plaintiff is involved in "public speaking and other community engagement events" at which defendants have also been "participants, speakers, and facilitators." Compl. ¶ 12, ECF 1-1. As part of that work, plaintiff was hired to facilitate outreach strategy related to the nascent Interstate 5 ("I-5") Rose Quarter Project, whereby the Oregon Department of Transportation is planning to expand I-5 through central Portland. *Id.* ¶ 20; Harmon Johnson Decl. ¶ 10–11, ECF 37. Plaintiff "was scheduled to act as a facilitator and moderator on March 25, 2022, at the high-profile Raimore Construction and Sundt Group 'Lunch and Learn' " event. Compl. ¶ 21. Marc Morial, the president and chief executive officer of the National Urban League, was also scheduled to participate in the event. *Id*; Harmon Johnson Decl., Ex. 2 at 3, ECF 37-1.

A few weeks before the Lunch and Learn event, the National Urban League's chief of staff emailed Harmon Johnson to inform her that Morial was participating in the event and to ask Harmon Johnson to attend if possible. Harmon Johnson Decl., Ex. 2 at 3, ECF 37-1. ULPDX had been involved in community discussions about the planned I-5 expansion and its potential effects

on a historically Black neighborhood in the project area. Harmon Johnson Decl. ¶¶ 11–13, ECF 37. Harmon Johnson sent the following email to Morial and Pizzimenti after learning that Morial was scheduled to appear at the event:

> Hi Marc. Be advised that the moderator for this event is someone who is excluded from the ULPDX office. Among other things, we have filed a complaint against him for harassing a member of my team.

Harmon Johnson Decl., Ex. 2 at 2, ECF 37-1. A few days later, Harmon Johnson emailed Pizzimenti and Morial again, stating that she and ULPDX would "avoid" the event based in part on plaintiff's "harassing behavior." *Id.* Morial subsequently withdrew from the event. Compl. 24, ECF 1-1; Harmon Johnson Decl. ¶ 16, ECF 37.

Plaintiff claims to have first learned of the harassment complaint against him in early March of 2022 during a phone call with an unidentified third party who asked plaintiff to "explain the 'harassment' situation" with ULPDX and the National Urban League. Compl. ¶ 20, ECF 1-1. Plaintiff was subsequently removed from the Lunch and Learn event, and he alleges that the "false allegations and rumors" about the alleged harassment complaint have "spread" and "circulat[ed] within and among the communities [plaintiff] is engaged with." *Id.* ¶¶ 23, 25–27. As a result, plaintiff "has been removed from various events and speaking engagements without explanation," which has caused him and his business to lose revenue and business opportunities. *Id.* ¶ 27. Plaintiff then brought this suit against defendants for defamation, false light invasion of privacy, and intentional interference with economic relations, in which he seeks $7,000,000 in economic damages and injunctive relief against all defendants.

Defendants filed a special motion to strike under O.R.S. 31.150 on the basis that plaintiff is a public figure and the alleged statements were true, and thus plaintiff's claims for defamation, false light invasion of privacy, and intentional interference with economic relations fail as a

4 – FINDINGS AND RECOMMENDATIONS

matter of law. Mot. Strike 1, ECF 35. Because defendants' motion to strike is premised on the factual sufficiency of plaintiff's claims, the court ordered the parties to engage in limited discovery relevant to the alleged defamatory statement. *See* Order (February 14, 2023), ECF 64. After that discovery was completed, the parties submitted the remaining briefing for the motion to strike. *See* Resp. Mot. Strike, ECF 71; Reply Mot. Strike ECF 75. Shortly after defendants filed their collective reply in support of the motion to strike, they filed a notice of supplemental authority alerting the court to a recent decision from the Oregon Court of Appeals, *Davoodian v. Rivera*, 327 Or. App. 197 (July 26, 2023). Notice Supp. Authority, ECF 78. The court ordered the parties to submit supplemental briefing addressing the *Davoodian* decision and *DeHart v. Tofte*, 326 Or. App. 720 (July 6, 2023), another recent decision from the Oregon Court of Appeals relevant to the "public interest" analysis under Oregon's anti-SLAPP statute. Order (July 31, 2023), ECF 79. The parties have submitted the requested supplemental briefing, and the merits of defendants' anti-SLAPP special motion to strike is now ripe for decision.

## II.     Anti-SLAPP Special Motion to Strike Standard

"A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). Oregon's anti-SLAPP statute, codified at O.R.S. 31.150, applies here,[5] and "provides a mechanism for a defendant to move to strike certain nonmeritorious claims predicated on speech and petitioning activity potentially entitled to constitutional protection." *Tokarski v. Wildfang*, 313 Or. App. 19, 21 (2021). The statute allows "for the dismissal of claims against persons participating in public issues before

---

[5] *See Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir. 2010) ("[W]e have "long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction.").

the defendant is subject to substantial expenses in defending against them." *Id.* at 21-22 (quotation marks and alteration omitted).

Oregon's anti-SLAPP statute establishes a two-step, burden-shifting process. *Wingard v. Or. Family Council, Inc.*, 290 Or. App 518, 521 (2018). First, the defendant must show that the "the claim against which the motion is made arises out of statements or conduct protected by" O.R.S. 31.150(2). *Id.* at 521–22. If the defendant succeeds, then the plaintiff must "establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion." *Id.* at 522 (quoting O.R.S. 31.150(3)). The approach to the second step differs in state and federal court. In state court, the "second step of the analysis is typically not constrained to the pleadings." *Conroy v. Clark*, No. 3:20-cv-00366-SB, 2020 WL 6731724, at *2 (D. Or. Oct. 29, 2020) (collecting cases). In federal court, though, the Federal Rules of Civil Procedure apply, and thus courts in the Ninth Circuit take a "tiered approach to anti-SLAPP motions." *Id.* (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834–35 (9th Cir. 2018); *see also Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law."). "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the [Rule] 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood*, 890 F.3d at 834. "[O]n the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the [Rule] 56 standard will apply." *Id.*

As this court determined in a previous order, defendants' special motion to strike was premised, at least in part, on the factual sufficiency of plaintiff's defamation claim. *Holt*, 2023 WL 2989115 at *4. Accordingly, the summary judgment standard applies to the present analysis.

6 – FINDINGS AND RECOMMENDATIONS

**III.     Summary Judgment Standard**

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing Fed. R. Civ. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**IV.     Discussion**

**A.     Protected Activity Under O.R.S. 31.150**

"At the first step of the anti-SLAPP analysis, the defendant must demonstrate that the challenged statements fall within one of the categories" set forth in O.R.S. 31.150(2). *Miller v. Watson*, No. 3:18-cv-00562-SB, 2019 WL 1871011, at *4 (D. Or. Feb. 12, 2019), *report and recommendation adopted,* No. 3:18-cv-00562-SB, 2019 WL 1867922 (D. Or. Apr. 25, 2019). Defendants here assert that the statements at issue were "in furtherance of the exercise of the

constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" under O.R.S. 31.150(2)(d). Mot. Strike 7–12, ECF 35.

To satisfy O.R.S. 31.150 (2)(d), "a defendant must demonstrate both that their conduct (1) was 'in furtherance of the constitutional right of free speech'; and (2) was 'in connection with a public issue or an issue of public interest.' " *DeHart*, 326 Or. App. at 742 (simplified) (quoting *Neumann v. Liles*, 295 Or. App. 340, 344 (2018)).[6]

As to the first prong, it is not necessary that the conduct in question be actually protected by the First Amendment for it to be "in furtherance of the constitutional right of free speech" under O.R.S. 31.150(2)(d). *Id.* (citing *Mullen v. Meredith Corp.*, 271 Or. App. 698, 707 (2015)). Oregon courts have "not yet considered and drawn the precise outer limits of what activity can be said to be 'in furtherance of the constitutional right of free speech' under ORS 31.150(2)(d)." *Id.* (simplified). But recent cases have interpreted the statutory term "in furtherance of" broadly to encompass conduct that is "communicative," *id.*, or that "advances or promotes the exercise of" First Amendment rights. *Davoodian*, 327 Or. App. at 207.

Regarding the second prong, the Oregon legislature has directed that the anti-SLAPP statutory provisions should "be liberally construed in favor of the exercise of the rights of expression" that the statute protects. O.R.S. 31.152(4). Numerous cases have followed that requirement, consistently interpreting the term "public interest" in section 2(d) broadly to

---

[6] Plaintiff incorrectly posits that the first step in the analysis must examine "whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." Resp. 8, ECF 71 (citing *Neumann v. Liles*, 358 Or. 706, 719 (2016)). That question goes to the second step of the anti-SLAPP analysis, not the first, as the very case that plaintiff cites explains. *See Neumann*, 358 Or. at 719 ("[T]o determine whether a defamatory statement is protected under the First Amendment, the first question is whether the statement involves a matter of public concern. If it does, then the dispositive question is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact.").

8 – FINDINGS AND RECOMMENDATIONS

encompass "any issue in which the public is interested." *Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 908 (D. Or. 2020) (simplified) (citing *Guzman v. Finch*, No. 3:19-cv-00412-MMA-AHG, 2019 WL 1877184, at *5 (S.D. Cal. Apr. 26, 2019)); *see also Higher Balance, LLC v. Quantum Future Grp., Inc.*, No. 3:08-cv-00233-HA, 2008 WL 5281487, at *5 (D. Or. Dec. 18, 2008) (explaining that the term "public interest" is construed broadly and included statements posted to an online forum about the quality of the plaintiff-company's products and services, and criminal proceedings involving the company's founder that were published in a state newspaper). And the Oregon Court of Appeals' recent *DeHart* decision confirms that the term "public interest" should be interpreted to have a broad and "common-sense meaning—namely, an issue that is of interest to the public." 326 Or. App. at 742 (internal quotation marks omitted) (citing *Neumann*, 295 Or. App. at 345; *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017) (noting that courts in California have interpreted "an issue of public interest" to mean "any issue in which the public is interested")).

Defendants rely primarily on several California cases that provide three categories of statements that satisfy the public interest requirement, including those statements about an individual "in the public eye." Mot. Strike 9–12 (citing *Sipple v. Found. For Nat. Progress*, 71 Cal. App. 4th 226, 239 (1999); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004) ("The most commonly articulated definitions of 'statements made in connection with a public issue' focus on whether (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; and (3) whether the statement or activity precipitating the claim involved a topic of widespread public interest.")). The "Oregon legislature modeled Oregon's anti-SLAPP statute on California's anti-SLAPP statute and

9 – FINDINGS AND RECOMMENDATIONS

intended that California case law would inform Oregon courts regarding the application" of it, and Oregon courts have regularly and recently relied on cases applying California's anti-SLAPP statute when applying Oregon's version. *Deep Photonics Corp. v. LaChapelle*, 282 Or. App. 533, 543 n.5 (2016); *see also DeHart*, 326 Or. App. at 742–43. The Oregon Court of Appeals in *DeHart* specifically relied on California courts' use of the same "three categories of statements that address issues of public interest" upon which the Portland Defendants rely here in their motion, 326 Or. App. 744, and this court agrees that those categories are a useful rubric to evaluate whether the Portland Defendants have carried their initial burden under the first step of the anti-SLAPP analysis under Oregon law.[7]

The parties' initial and supplemental briefing focuses primarily on the second prong, and thus the analysis turns there first. *See* Mot. Strike 7–11, ECF 35; Resp. 9–11, ECF 71. Plaintiff's complaint details his involvement and prominence in the Portland metropolitan area through numerous government entities, community organizations, and other publicly facing projects. He has, among other things, served as the chair of the N/NE Neighborhood Strategies Oversight Committee for the City of Portland for the past seven years. Compl. ¶ 16(a), ECF 1-1. Plaintiff "worked with the City of Gresham on community stabilization for displaced individuals," and was the "equity consultant" for the city manager, deputy city manager, as well as the Gresham

---

[7] Oregon courts have distinguished between court decisions from other jurisdictions that "existed at the time" the Oregon legislature enacted a statute based on the law of another jurisdiction, and those court decisions from other jurisdictions "published after enactment" of the statute by the Oregon legislature. The latter categories of cases "may be consulted for their persuasive value," but are not controlling on an Oregon's courts subsequent interpretation of the statute in question. *Deep Photonics*, 282 Or. App. at 543 n.5. Here, the distinction is not particularly significant in light of *DeHart*'s reliance on "persuasive" California case law regarding the "public interest" prong. 326 Or. App. at 725, 744 (examining statements made about "elected public officials who were in the public eye as a result of their stance on an issue that affected a large number of people.") (citing *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1254 (2017)) (additional citations omitted).

10 – FINDINGS AND RECOMMENDATIONS

Police Department. *Id.* ¶ 17(b). His work as a "civil rights leader" and as the leader of a "first-of-its kind community panel tasked with watching over" a $20 million City of Portland initiative to "fight gentrification in Portland's traditional African American neighborhoods" has been documented in prominent local media. Davidson Decl., Ex. 4 at 1–2, ECF 38-1; *id.*, Ex. 5 at 2, ECF 38-1. These facts are sufficient to show that plaintiff is in the "public eye." *See Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 822 (2016) ("Subsection (2)(d) encompasses the conduct at the heart of this claim, a comment defendant allegedly made about the professional conduct of the leader of a public corporation."); *DeHart*, 326 Or. App. at 744 (holding that plaintiffs were "in the public eye as a result of their stance on an issue that affected a large number of people") (citing *Living Vehicle, Inc. v. Kelley*, 2:22-cv-06226-RGK-AS, 2023 WL 2347442, at *4 (C.D. Cal. Jan. 20, 2023); *Jackson*, 10 Cal. App. 5th at 1254 (additional citations omitted); *cf. Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003) (finding that an individual who "had previously received no public attention or media coverage" was not "in the public eye").

Plaintiff's assertion that he "never intentionally held [himself] out as a public figure or as someone who represents a group of people" does not change this analysis. *See* Resp. 9–10, ECF 71; Holt Decl. ¶ 5, ECF 72. For one, the facts alleged in plaintiff's complaint belie his effort to now downplay his involvement in local political and community issues of public interest. For example, in the complaint, plaintiff alleges that his work as an "equity consultant" for the City of Gresham included developing "strategies to assist the African American community," and the allegedly defamatory statements made about him may "reflect poorly on . . . these initiatives and potentially harm the interests of the communities he served[.]" Compl. ¶ 17(b), ECF 1-1. Plaintiff further alleges that his work as a national director for an organization "dedicated to

11 – FINDINGS AND RECOMMENDATIONS

promoting an equitable approach to law enforcement, community engagement and political responsibility" has been impacted by defendants' statements. *Id.* ¶ 16(c). Moreover, the I-5 Rose Quarter Project and its potential impact on historically Black neighborhoods in Portland is a matter of widespread local public interest, evidenced in part by media coverage of the project and the involvement of numerous community advocacy organizations in the planning process. *See* Davidson Decl., Ex. 8 at 11–27, ECF 38-1; Harmon Johnson Decl. ¶¶ 11–13, ECF 37. According to plaintiff, one of the primary effects of defendants' allegedly defamatory statements was that he was removed as a "facilitator and moderator" for a "high profile" event regarding the I-5 Rose Quarter Project. Given plaintiff's role in a "high profile" public event about a large-scale interstate highway development project, statements about his professional conduct related to that project easily qualify as statements about an issue of "public interest" under O.R.S. 31.150(2)(d). *See DeHart*, 326 Or. App. at 744 ("[T]here can be no dispute that the [issue] was . . . of significant public interest, having received local, statewide, and national media attention."); *see also Sipple*, 71 Cal. App. 4th at 239–40 (finding that an article about the personal life of a nationally known political consultant was of "public interest").

The alleged statements that Harmon Johnson and ULPDX planned to "protest" the Lunch and Learn event if plaintiff was involved, or that they "publicly threatened to boycott" events where plaintiff was scheduled to appear are precisely the type of conduct that Oregon courts have held to be "in furtherance of the constitutional right of free speech." *See* Compl. ¶¶ 24, 46b, ECF 1-1; *see also DeHart*, 326 Or. App. at 744 (holding conduct that "furthered lawful forms of civic engagement on [an] issue [of public interest] by members of the public—such as boycott" was covered by O.R.S. 31.150(2)(d)). The email communication Harmon Johnson sent to Morial and Pizzimenti also falls under O.R.S. 31.150(2)(d), especially in light of the Oregon Court of

12 – FINDINGS AND RECOMMENDATIONS

Appeals decision in *Davoodian*. There, the plaintiff sued the defendant after the plaintiff "received a letter from [the defendant's] attorney advising him that she intended to file a civil complaint alleging that he had sexually assaulted her and seeking $2 million in damages." *Davoodian*, 327 Or. App. at 199. The court found that although the "letter and unfiled complaint here were communicated privately . . . the subject matter of that communication—civil claims arising from an alleged sexual assault by a person who identified himself on an online dating app as an anesthesiologist at Oregon Health and Science University (OHSU)" was related to a matter of general interest to the public, "particularly those members of the public who are using online dating apps or need anesthesia at OHSU." *Id.* at 212. Similarly here, although the email communication from Harmon Johnson to Morial and Pizzimenti was a private communication, the subject matter of the communication—an allegation of harassment against a person serving in a prominent role in the I-5 Rose Quarter Project—is a matter of public interest, especially for those individuals who may seek to become involved in the public debate and community events around that important project.

Defendants have thus satisfied their initial burden to show that their alleged conduct falls under O.R.S. 31.150(2)(d).

      **B.**      **Substantial Evidence for Prima Facie Case**

The burden now shifts to plaintiff to show "there is a probability that [he] will prevail on the claim by presenting substantial evidence to support a prima facie case." O.R.S. 31.150(3); *see also Dossett*, 472 F. Supp. 3d at 909.

As an initial matter, plaintiff does not provide any evidence supporting a prima facie case for defamation, false light invasion of privacy, or intentional interference with economic relations against any of the Board Member Defendants. *See* Compl. ¶¶ 32–56, ECF 1-1. There is

13 – FINDINGS AND RECOMMENDATIONS

no evidence that the individual Board Member Defendants took any actions or made any statements at all, much less any conduct that could support plaintiff's claims. It has long been the case that civil liability cannot be based solely on an individual's association with an organization or other groups of individuals. *See N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) ("Civil liability may not be imposed merely because an individual belonged to a group . . . . For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims."). Thus, plaintiff has failed to show any likelihood that he will prevail on any claims against the Board Member Defendants.

Regarding the defamation claims against defendants Harmon Johnson and ULPDX, the challenged statements are not actionable because they are true. *Dossett*, 472 F. Supp. 3d at 913 (granting special anti-SLAPP motion to strike because "the statements are not false, and therefore are not actionable"). "To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Id.* at 910 (quoting *Neumann*, 358 Or. at 711). "To be actionable, a communication must be both false and defamatory." *Id.* (quoting *Reesman v. Highfill*, 327 Or. 597, 603–04 (1998)).

The parties primarily focus on the statements Harmon Johnson made in the March 2022 emails to Morial and Pizzimenti, which, again, are as follows:

> Hi Marc. Be advised that the moderator for this event is someone who is excluded from the ULPDX office. Among other things, we have filed a complaint against him for harassing a member of my team.

Harmon Johnson Decl., Ex. 2 at 2, ECF 37-1. The undisputed evidence in the record shows that these statements are true. In January of 2020, a ULPDX employee lodged a complaint against plaintiff following a meeting of a community-based committee initiated by Prosper Portland, an

14 – FINDINGS AND RECOMMENDATIONS

economic and urban development agency for the City of Portland. Doe Decl. ¶¶ 2–4, ECF 36. As part of her employment with ULPDX, the employee served "as a nominated member" of the committee. *Id.* ¶ 3. After the January 2020 meeting, the employee emailed a human resources representative at Prosper Portland detailing "multiple negative encounters that involved a facilitator of the project" and others during the January, 2020 meeting. *Id.* ¶ 6; *id.*, Ex. 1 at 4–5, ECF 36–1. The email provides, in relevant part:

> I am emailing with intentions to make a complaint (I see you listed as a contractor for HR to [P]rosper) regarding my experience at a recent Williams and Russell community open house, on January 9th, 2020, in which Prosper Portland is highlighted as a lead organizer.
>
> . . .
>
> During the community event last week, I experienced multiple negative encounters that involved a facilitator of the project, members of the working group committee, and one of the project managers—all whom identify as male. You see, I am 6 months pregnant and was made to feel very uncomfortable by comments made during the event.
>
> 1. A facilitator of the event mentioned that I am "breaking hearts" insinuating that I am disappointing men who may have been attracted to me before I became so visibly pregnant.
>
> 2. A project working group committee member approached me very closely, pointed at my stomach, and said "whoa, what is that!". I replied that I am pregnant and he responded saying, "oh so that's why you have missed so many meetings, I know what you have been up to and it looks like a lot of baby weight is going to your hips." I want to highlight here that I regularly attend most meetings and none of my absences are due to my pregnancy. I also do not feel as if I am obligated to announce my pregnancy to anyone within the working group.
>
> 3. A project manager and another committee member on the project also approached me and asked why I did not tell them that I am pregnant.

Doe Decl., Ex. 1 at 4, ECF 36-1 (some formatting omitted). The employee requested to "have this complaint on record and additionally an anti-harassment email b[e] sent to the . . . working group members, facilitators, project managers, etc. . . . Just some sort of formal notice that

15 – FINDINGS AND RECOMMENDATIONS

gender biased opinions and body shaming i[s] not acceptable at any time within the group or towards the community at large in attendance at events." *Id.*; *see also id.*, Ex. 1 at 2-4 (response from Prosper Portland's human resources director indicating complaint was received and action was taken).[8]

Harmon Johnson was made aware of the employee's complaint and was told that plaintiff was the facilitator referenced in the employee's complaint. Harmon Johnson Decl. ¶ 8, ECF 37. Harmon Johnson "decided at that time that ULPDX would not continue to participate in any programming where [plaintiff] would also be involved." *Id.* ¶ 9. "Also, because of earlier misbehavior toward another ULPDX employee," Harmon Johnson "earlier had banned [plaintiff] from the premises of the ULPDX office." *Id.* Harmon Johnson had not communicated that decision to plaintiff because he had not yet tried to return to the ULPDX office. *Id.*

In short, Harmon Johnson's email statements to Morial and Pizzimenti were true: a ULPDX employee had, in fact, lodged a harassment complaint against plaintiff, and Harmon Johnson had, in fact, excluded plaintiff from ULPDX property. Plaintiff's defamation claim therefore necessarily fails.

Plaintiff asserts that Harmon Johnson's statement that plaintiff "had made a harassing statement is susceptible of being proven true or false by an investigation into whether the statements were made, and whether the statements were made with the intention of conveying a potentially harassing statement. As far as Plaintiff is aware, there was never an investigation into the complaint." Resp. Mot. Strike 14, ECF 71. Plaintiff points to an internal document from ULPDX that describes how the organization would handle an internal harassment or

---

[8] The employee who filed the complaint resigned from the committee in February of 2020. Harmon Johnson Decl. ¶ 8, ECF 37.

16 – FINDINGS AND RECOMMENDATIONS

discrimination complaint. *See id.* But the employee's complaint against plaintiff was lodged with Prosper Portland, a separate entity altogether from ULPDX. Moreover, plaintiff was not a ULPDX employee, and offers no argument or explanation as to why ULPDX's internal investigatory procedure regarding harassment complaints has any relevance to the harassment complaint at issue here. Additionally, Harmon Johnson did not make any statement about any investigation or its result; the email stated merely that ULPDX had "filed a complaint against him for harassing" a ULPDX employee and, as explained, that is indisputably true. Harmon Johnson Decl., Ex. 2 at 2, ECF 37-1; Doe Decl., Ex. 1 at 4, ECF 36-1 (stating that the employee was "emailing [Prosper Portland] with intentions to make a complaint").

Plaintiff also asserts that Harmon Johnson "had a duty to specify the harassing behavior to exclude any presumption that it was harassment arising to sexual assault." Resp. 7, ECF 71. But plaintiff offers no authority to support that proposition and, again, Harmon Johnson's statement that a complaint was "filed" against plaintiff is true. Nor does plaintiff offer any authority or argument to support a claim for defamation based on the alleged statements that Harmon Johnson or ULPDX would "protest" or "boycott" any future event at which plaintiff was scheduled to appear. Those statements are a true reflection of the decision by Harmon Johnson "that ULPDX would not continue to participate in any programming where [plaintiff] would also be involved." Harmon Johnson Decl. ¶ 9, ECF 37.

Defendants further claim they are entitled to qualified privilege because the email communication from Harmon Johnson to Morial and Pizzimenti about the harassment complaint against plaintiff was a "matter of mutual concern to both ULPDX and the National Urban League[.]" Mot. Strike 13, ECF 35. Under Oregon law, a defendant can raise qualified privilege as a defense, which in turn requires the plaintiff to show that the alleged defamatory statement

17 – FINDINGS AND RECOMMENDATIONS

was made with "actual malice," meaning that the words were said with reckless disregard for the truth of the matter asserted. *DeLong v. Yu Enterprises, Inc.*, 334 Or. 166, 170 (2002); *Paulson v. Carter*, No. 3:04-cv-01501-KI, 2006 WL 381951, at *12 (D. Or. Feb. 16, 2006), *aff'd,* 230 F. App'x 645 (9th Cir. 2007) ("Actual malice is knowing that the statement is false or with reckless disregard of the statement's truth or falsity.") (citation omitted).

Plaintiff concedes the defense applies here but argues Harmon Johnson acted with actual malice because "she knew that the complaint related to a statement made during a seminar, and did not include any unwanted touching or sexual conduct; which is the typical connotation which is associated with a 'harassment complaint' against a male figure without further context." Resp. 15, ECF 71. But again, plaintiff offers no authority that restricts the term "harassment" to only include physical touching or sexual conduct, and thus there is nothing to support "actual malice" here.

In response to the court's request for the parties to submit supplemental briefing to address the most recent decisions from the Oregon Court of Appeals applying O.R.S. 31.150(2)(d), plaintiff submitted a declaration that attached a video and a transcript of the January 2020 committee meeting from which the ULPDX employee's harassment complaint against plaintiff arose. *See* Holt Decl., Ex. 1, ECF 86. Defendants have moved to strike this declaration and evidence, arguing that the submission was untimely and ultimately irrelevant to ruling on their anti-SLAPP special motion to strike. Mot. Strike 1–3, ECF 88. Indeed, plaintiff fails to offer any compelling argument as to why the video and transcript were not produced earlier. It was clear from defendants' initial filing of the special motion to strike back in August of 2022 that the January 2020 event was the genesis of the harassment complaint against plaintiff because defendants included a copy of the email from the ULPDX employee initiating the

complaint and describing in detail the grounds for it. *See* Mot. Strike 3, ECF 35 (setting forth a screen shot of the email and referencing the Doe Declaration). But even looking past the procedural problems with plaintiff's submission, the video and transcript do not change the preceding analysis regarding plaintiff's defamation claim. It may be true that the video and transcript do not reflect that plaintiff made alleged harassing comments into the microphone while at the front of the stage during the event, but the video does not capture every conversation or interaction that occurred during the event in January of 2020. And there still remains no dispute that a ULPDX employee initiated a harassment complaint against plaintiff; Harmon Johnson's statement accurately reporting that fact to other people is simply not defamatory, notwithstanding what the video shows or does not show.

Finally, plaintiff has failed to produce substantial evidence supporting a prima facie claim of false light invasion of privacy or intentional interference with economic relations against defendants Harmon Johnson and ULPDX. Because, as explained, the statements at issue were true, plaintiff's "false light" claim fails. *See Dean v. Guard Pub. Co.*, 73 Or. App. 656, 659 (1985) ("To place a person in a false light is akin to defamation, because it leads others to believe something about that person which is not true."). So too does plaintiff's economic interference claim; because Harmon Johnson's statement was true, plaintiff cannot establish the "improper means" element of that claim. *See Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 15 F. Supp. 3d 1075, 1105 (D. Or. 2014), *aff'd,* 863 F.3d 1178 (9th Cir. 2017) ("To state a claim for tortious interference with contract under Oregon law, a party 'must allege each of the following elements: (1) the existence of a professional or business relationship (which could include, *e.g.,* a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an

19 – FINDINGS AND RECOMMENDATIONS

improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.' ") (quoting *McGanty v. Staudenraus,* 321 Or. 532, 535 (1995)).

## RECOMMENDATIONS

The Special Motion to Strike Pursuant to O.R.S. 31.150–31.152 filed by defendants The Urban League of Portland, Inc., and Nkenge Harmon Johnson (ECF 35) and the Motion for Joinder filed by defendants Karis Stoudamire-Phillips, James Mason, and Sean Murray (ECF 39) should be granted. The Motion to Strike Plaintiff's Supplementary Memorandum and Declaration (ECF 88) should be denied as moot.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, October 12, 2023. If no objections are filed, the n the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED September 28, 2023.

      /s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge