UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN HOLT, an individual, and TRY
EXCELLENCE, LLC, an Oregon Domestic
limited liability company,

        Plaintiffs,

    v.

THE URBAN LEAGUE OF PORTLAND,
INC., an Oregon Domestic non-profit
corporation; NKENGE HARMON-JOHNSON,
individually and as President and CEO of THE
URBAN LEAGUE OF PORTLAND, INC.;
MICHAEL LEWELLEN, individually and as
Board Chairman of THE URBAN LEAGUE OF
PORTLAND, INC.; KARIS STOUDAMIRE-
PHILLIPS, individually and as a Board Member
of THE URBAN LEAGUE OF PORTLAND,
INC.; JAMES MASON, individually and as a
Board Member of THE URBAN LEAGUE OF
PORTLAND, INC.; SEAN MURRAY,
individually and as a Board Member of THE
URBAN LEAGUE OF PORTLAND, INC.;
NATIONAL URBAN LEAGUE, INC., a New
York Domestic not-for-profit corporation;
MARC MORIAL, individually and as President
and CEO of NATIONAL URBAN LEAGUE,
INC.; and TINA PIZZIMENTI, individually and
as the Chief of Staff to CEO Defendant Morial
of Defendant NATIONAL URBAN LEAGUE,

        Defendants.

Case No. 3:22-cv-00837-YY

FINDINGS AND
RECOMMENDATIONS

1 – FINDINGS AND RECOMMENDATIONS

## FINDINGS

After successfully defeating plaintiff Steven Holt's[1] defamation suit via an "anti-SLAPP" special motion to strike under O.R.S. 31.150, defendant The Urban League of Portland, Inc. ("ULPDX") now moves for attorney fees and costs, specifically $93,918 in attorney fees and $402 in costs associated with removing the case to federal court. *See* Mot. Attorney Fees 8, ECF 106; Reply 7, ECF 112.

Attorney fee awards in federal actions brought under state law are a substantive matter to which state law applies. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018); *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 838 (9th Cir. 2001). Here, O.R.S. 31.152(3) provides that a "defendant who prevails on a special motion to strike made" under O.R.S. 31.150 "shall be awarded reasonable attorney fees and costs." Defendant prevailed on its motion to strike, so attorney fees and costs are mandatory. *See Ard v. Oregon State Bar*, No. 3:20-cv-02143-JR, 2021 WL 3852191, at *1 (D. Or. Aug. 11, 2021), *report and recommendation adopted,* No. 3:20-cv-02143-JR, 2021 WL 3849706 (D. Or. Aug. 27, 2021). To determine a reasonable fee award under O.R.S. 31.152(3), the factors provided in O.R.S. 20.075 must be considered. *Biggar v. Oregon Bd. of Optometry*, No. 3:17-cv-00714-MO, 2018 WL 2244704, at *1 (D. Or. May 16, 2018) (citing *Robinson v. DeFazio*, 284 Or. App. 98, 103 (2017)). O.R.S. 20.075 "requires courts to undertake a two-part inquiry when assessing the amount of attorney fees to be awarded in a case such as this one where attorney fees are required by statute." *Id.* First, the court must consider:

---

[1] Although both plaintiff Holt and plaintiff Try Excellence, LLC are named in the complaint, the relevant facts underlying the alleged claims are identical and the legal analysis is the same for each plaintiff. Thus, these Findings and Recommendations use the singular "plaintiff" for clarity as a collective reference for both plaintiffs.

(a)     The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b)     The objective reasonableness of the claims and defenses asserted by the parties.

(c)     The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d)     The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e)     The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f)     The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g)     The amount that the court has awarded as a prevailing party fee under O.R.S. 20.190.

(h)     Such other factors as the court may consider appropriate under the circumstances of the case.

O.R.S. 20.075(1). Second, the court must consider:

(a)     The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b)     The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c)     The fee customarily charged in the locality for similar legal services.

(d)     The amount involved in the controversy and the results obtained.

(e)     The time limitations imposed by the client or the circumstances of the case.

(f)     The nature and length of the attorney's professional relationship with the client.

(g)     The experience, reputation and ability of the attorney performing the services.

(h)     Whether the fee of the attorney is fixed or contingent.

(i)     Whether the attorney performed the services on a pro bono basis or the award of attorney fees otherwise promotes access to justice.

O.R.S. 20.075(2); *see also Biggar*, 2018 WL 2244704 at *1–*2.

The first set of factors, which generally analyze the merits of the litigation and the

attorney's conduct during it, supports defendant's requested amount of fees. It was clear early on

that the merits of plaintiff's defamation claim were tenuous at best. *See* O.R.S. 20.075(1)(b). The

emails attached to defendant's special motion to strike made clear that there had, in fact, been a harassment complaint lodged against plaintiff. *See* Def. Mot. Strike 3–4, ECF 35. Thus, the key issue in plaintiff's case—whether defendant's statement that plaintiff had been the subject of a harassment complaint was false—was doomed from the start. An award of fees here would deter future plaintiffs from asserting similarly meritless claims. *See* O.R.S. 20.075(1)(d).

Furthermore, plaintiff expanded the scope of the litigation by refusing to concede that Oregon's anti-SLAPP statute applied to this case because it is one of "public interest" and he is a "public figure." *See* Resp. Mot. Strike 9–12, ECF 71; *see also* O.R.S. 20.075(1)(a). Plaintiff's own allegations even reflected both elements; specifically, plaintiff alleged that he was well-known throughout Portland African-American community and he was prominently involved in a "high profile" event about the I-5 corridor construction project. *See* Findings and Recommendations (Sept. 28, 2023) 8–12, ECF 91. This was especially true given the broad interpretation that courts have given to the "public interest" requirement in Oregon anti-SLAPP statute. *See Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 908 (D. Or. 2020) ("The term 'public interest' includes any issue in which the public is interested, and the issue need not be significant to be protected.") (internal quotation marks omitted). Additionally, plaintiff's counsel did not file a declaration that included a transcript of the meeting at which plaintiff allegedly harassed a ULPDX employee until after the briefing on defendant's motion to strike was already completed, despite having access to a video recording of the meeting for months. *See* Holt Decl., ECF 86. This required defendant to expend additional resources in drafting a motion to strike that untimely submission. *See* O.R.S. 20.075(1)(e). And apparently plaintiff never meaningfully engaged in any settlement discussions. *See* Mot. Attorney Fees 6, ECF 106; O.R.S. 20.075(1)(f).

The second set of factors, which generally looks to the skill and experience of the attorneys, and other circumstances surrounding the attorneys' representation of the client involved in the case, also support defendant's requested fees. Defense counsel Clifford Davidson's hourly rate of $525 is reasonable based on his 18 years of experience in corporate litigation where the median hourly rate for downtown Portland lawyers is $495 per hour in inflation-adjusted dollars, especially considering his specialty in anti-SLAPP litigation. *See* O.R.S. 20.075(2)(c), (g); Davidson Decl. ¶ 3, ECF 107; *id.*, Ex. 1 at 4, ECF 107-1 ("OSB Economic Survey"); *see also Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2023 WL 6213352, at *3 (D. Or. Sept. 24, 2023) (finding that hourly rate of $525 was reasonable because the attorney's time spent on the case "was directly related to her expertise in complex class actions"). Defense counsel Marsha Cotton's hourly rate of $425 is also reasonable for a lawyer with her six years of experience because it is below the median rate for downtown Portland business and corporate litigators ($450 per hour) and below the 95th percentile of all lawyers in downtown Portland with four to six years of experience. *See* Davidson Decl., Ex. 1 at 2–4, ECF 107-1. The Oregon State Bar Economic Survey is the typical starting point for evaluating the reasonableness of attorney fees in a case like this one. *See* Local Rule 54-3 Practice Tip ("[T]he Court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey."); *Roberts v. Interstate Distrib. Co.,* 242 F.Supp.2d 850, 857 (D. Or. 2002) (explaining that in determining a reasonable hourly rate, the District of Oregon uses the OSB Economic Survey "as an initial benchmark"). Plaintiff's reference to data from a study published by a private company, Clio, that reported attorney hourly rates for Oregon as a whole and does not include downtown Portland-specific information, and is based on a limited survey of lawyers that use Clio's

software, is not a persuasive reason to depart from the OSB Economic Survey. *See* Objs. 3, ECF 111; *see also In re PersonalWeb Techs., LLC*, No. 5:18-cv-00767-BLF, 2023 WL 8701304, at *11 (N.D. Cal. Dec. 15, 2023) (rejecting use of Clio survey for determining reasonable rate because it reported state-wide rates and not those specific to the Northern District of California).

The overall number of attorney hours spent is reasonable, especially considering plaintiff made decisions at several junctures that increased the time and cost necessary to defend against his claims. *See* O.R.S. 20.075(2)(a). As mentioned above, plaintiff refused to concede the "public interest" and "public figure" issues despite the allegations in the complaint to that effect and the very liberal interpretation that courts have given in defining what constitutes "public interest" under Oregon's anti-SLAPP statute. Plaintiff insisted on conducting discovery despite having been provided the email from the ULPDX employee who lodged the harassment complaint against plaintiff that foreclosed his defamation claim. *See* Mot. Attorney Fees 6, ECF 106; Reply 3–4, ECF 112. And in his response to the motion to strike, plaintiff never directly addressed the legal significance of this email vis-à-vis his defamation claim and instead raised ancillary and largely irrelevant issues that did not bear on whether defendant's alleged statement—that a ULPDX employee had lodged a harassment complaint against plaintiff—was true. *See*, *e.g.*, Pl. Resp. Mot. Strike 15, ECF 71 (arguing that because the harassment complaint by the ULPDX employee "did not include any unwanted touching or sexual conduct," that somehow showed that defendant's intentions in disclosing the complaint was malicious).

The approximately $90,000 in fees is reasonable in proportion to the $7,000,000 in damages that plaintiff sought in this case, and defendant's counsel achieved full dismissal of the case. *See* O.R.S. 20.075(2)(d). Furthermore, because defendant is a non-profit organization, defense counsel charged a below-market rate and took the case on a partial contingency basis

whereby they would be paid if defendant prevailed. *See* O.R.S. 20.075(2)(h); Mot. Attorney Fees 7, ECF 106. The requested award promotes access to justice and is consistent with the remedial nature of the statute because it encourages attorneys experienced in anti-SLAPP litigation to represent organizations and individuals on a contingent basis or at a reduced rate. *See* O.R.S. 20.075(2)(i)

Plaintiff generally objects to defendant's claim for nearly $5,000 in electronic research costs, but does not provide any specific argument or analysis why any particular charge was unreasonable or excessive. *See* Objs. 5, ECF 111. Thus, any objection on these grounds is meritless, especially given the other circumstances explained above about the objective weakness of plaintiff's claims and how this case was litigated.

Finally, the requested $4,200 in fees incurred in preparing the motion for attorney fees and the reply in support of it is reasonable, especially considering that plaintiff's counsel apparently did not respond to defense counsel's attempts to agree on an amount of fees—which are mandatory under Oregon's anti-SLAPP statute—in lieu of motions practice. *See* Mot. Attorney Fees 7–8, ECF 106; Reply 7, ECF 112.

## RECOMMENDATIONS

Defendant Urban League of Portland, Inc.'s Motion for Attorney Fees and Costs [106] in the amount of $94,320, consisting of $93,918 in attorney fees and $402 in costs, should be granted.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, June 07, 2024. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED May 22, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge