UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN HOLT, an individual, and TRY EXCELLENCE, LLC, an Oregon Domestic limited liability company,

        Plaintiffs,

v.

THE URBAN LEAGUE OF PORTLAND, INC., an Oregon Domestic non-profit corporation; NKENGE HARMON-JOHNSON, individually and as President and CEO of THE URBAN LEAGUE OF PORTLAND, INC.; MICHAEL LEWELLEN, individually and as Board Chairman of THE URBAN LEAGUE OF PORTLAND, INC.; KARIS STOUDAMIRE-PHILLIPS, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; JAMES MASON, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.; and SEAN MURRAY, individually and as a Board Member of THE URBAN LEAGUE OF PORTLAND, INC.,

        Defendants.

Case No. 3:22-cv-00837-YY

FINDINGS AND RECOMMENDATIONS

**FINDINGS**

Plaintiff Steven Holt, both individually and through his ownership and operation of plaintiff Try Excellence, LLC, brought this suit alleging defamation, false light invasion of

1 – FINDINGS AND RECOMMENDATIONS

privacy, and intentional inference with economic relations against defendants Urban League of Portland, Inc. ("ULPDX"), its president and chief executive officer Nkenge Harmon Johnson,[1] and its board members Michael Lewellen, Karis Stoudamire-Phillips, Dr. James Mason, and Sean Murray.[2] Previously, the court granted defendants' Special Motion to Strike under Oregon's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statutes, O.R.S. 31.150, *et seq.*, and granted defendants' subsequent Motion for Attorney fees under that same statutory scheme, *see* ECF 91, 100, 101, 114, 121. Plaintiffs have appealed both decisions. *See* ECF 110, 123.

Currently pending is defendants' Motion for Cost Bond, which seeks an "order requiring [plaintiffs] to file a bond in the amount of $96,682 to ensure payment of the [defendants'] costs on appeal." Mot. Bond 2, ECF 128. Federal Rule of Appellate Procedure ("FRAP") 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." The need for a bond and its amount are matters left to the trial court's discretion. *Senne v. Kansas City Royals Baseball Corp.*, No. 3:14-cv-00608-JCS, 2023 WL 4238509, at *1 (N.D. Cal. June 27, 2023) (citing *Schulken v. Washington Mut. Bank*, No. 5:09-cv-02708-LHK, 2013 WL 1345716, at *4 (N.D. Cal. Apr. 2, 2013)). "The purpose of a 'Rule 7 bond is designed to protect the amount the appellee stands to have reimbursed, not to impose an independent penalty on the appellant.' "

---

[1] Harmon Johnson was "erroneously sued as 'Nkenge Harmon-Johnson' " in the Complaint. Mot. Strike 15, ECF 35. Harmon Johnson's correct, unhyphenated name is used in these Findings and Recommendations.

[2] Plaintiffs also sued the National Urban League, Inc., its president and chief executive officer Marc Morial, and Morial's chief of staff, Tina Pizzimenti (collectively "New York Defendants"). Compl. ¶¶ 1–10, 32–53, ECF 1-1. The New York Defendants were dismissed from this suit for lack of personal jurisdiction in a previous order. Findings and Recommendations (February 17, 2023), ECF 66, adopted by Order (March 9, 2023), ECF 68. Plaintiffs have not appealed that decision.

*Fleury v. Richemont N. Am., Inc.*, No. 3:05-cv-04525-EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008) (quoting *Capizzi v. States Res. Corp.*, Nos. 1:02-cv-12319-DPW, 1:04-cv-10095-DPW, 2005 WL 958400, at *1 (D. Mass. Apr. 26, 2005)) (simplified).

Although the Ninth Circuit has not provided authoritative guidance on how to determine whether a bond is appropriate, the parties here rely on the prevailing test used by district courts in this circuit, which considers the following factors: "(1) the appellants' financial ability to post bond; (2) the risk that appellants will not pay the costs if they lose the appeal; and (3) the likelihood that they will lose the appeal and be subject to costs." *Senne*, 2023 WL 4238509 at *1; *see also Maguire v. Eco Sci. Sols., Inc.*, No. 2:18-cv-01301-RSL, 2021 WL 243305, at *1 (W.D. Wash. Jan. 25, 2021); *Swenson v. Bushman Inv. Properties, Ltd.*, No. 1:10-cv-00175-EJL, 2013 WL 6491105, at *1 (D. Idaho Dec. 9, 2013); Mot. Bond 2–3, ECF 128; Resp. 2, ECF 135.

As to the first factor, "[w]hen an appellant is unable to pay the bond amount, the bond requirement risks becoming a barrier to the appellant's right to appeal, potentially implicating due process rights, and thus weighs against granting the bond." *Zakikhani v. Hyundai Motor Co.*, No. 8:20-cv-01584-SB-JDE, 2023 WL 9420118, at *1 (C.D. Cal. Dec. 14, 2023). It is the appellant's burden to establish the inability to post an appeal bond. *James v. Uber Techs. Inc.*, No. 3:19-cv-06462-EMC, 2022 WL 6468665, at *3 (N.D. Cal. Oct. 10, 2022). There is no controlling standard as to what evidence may be sufficient to carry that burden, but courts have often looked to whether the appellants provided "specific financial information demonstrating that they cannot afford to post a bond [or] reflecting the maximum amount that they can afford." *Senne*, 2023 WL 4238509 at *2; *see also Sharbat v. Iovance Biotherapeutics, Inc.*, No. 1:20-cv-01391-ER, 2024 WL 2078390, at *9 (S.D.N.Y. May 9, 2024) ("An appellant asserting that the

3 – FINDINGS AND RECOMMENDATIONS

amount of a Rule 7 bond presents a financial barrier to an appeal, however, must make a sufficient showing in support of that assertion and not merely conclusory statements.").

Holt submitted a declaration in which he states that both he and Try Excellence have assets exceeding $100,000, and that Holt is "technically capable of paying the bond," but "would suffer irreparable harm as a result of taking the remaining liquid assets from [Try Excellence] and my personal accounts to pay a bond for the appeal." Holt Decl., ¶ 3–5, ECF 135 at 9. Holt also states that he is "in the process of working with family to gain a bond such to satisfy the requested bond amount of the Respondent in the appeal if the Court were to require a bond in the full amount." *Id.* In other words, it appears that plaintiffs are actually capable of paying the bond. *See also* Resp. 3 (stating that Holt is "a relatively successful individual with personal assets" and Try Excellence is "an entity with receivables and assets of its own"). And although plaintiffs assert they will suffer "irreparable harm" if a bond is required, plaintiffs have not provided any evidence supporting that assertion or provided any details of their financial position to enable any meaningful analysis of the burden that the bond would impose. Accordingly, the first factor weighs in favor of requiring a bond. *See Miller v. 4Internet, LLC*, No. 2:18-cv-02097-JAD-VCF, 2022 WL 17823560, at *6 (D. Nev. Dec. 20, 2022), *aff'd,* No. 22-16195, 2024 WL 3219716 (9th Cir. June 28, 2024) (finding evidence was insufficient to establish that requiring appellant to post a bond would "burden his right to appeal") (quoting *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007)) (brackets omitted).

As to the second factor, "it weighs in favor of granting an appeal bond when collecting costs after a failed appeal would be difficult." *James*, 2022 WL 6468665 at *4. "[S]ome courts have held that when an appellant resides out of state, and even more so, outside the circuit, the risk of nonpayment is increased, since plaintiffs would be required to institute multiple collection

4 – FINDINGS AND RECOMMENDATIONS

actions to recover their costs." *Zakikhani*, 2023 WL 9420118 at * 1 (citing *In re Petrobras Sec. Litig.*, No. 1:14-cv-09662-JSR, 2018 WL 4521211, at *11 (S.D.N.Y. Sept. 21, 2018)). A personal guarantee that an appellant will pay the costs can mitigate these risks and weigh against requiring a bond. *Id.*

Here, the second factor is neutral. Holt is a Washington resident and Try Excellence is an Oregon limited liability company. This split citizenship may make enforcement of a judgment theoretically more difficult, but it should be noted that plaintiffs have already satisfied the judgment awarding defendants approximately $93,000 in attorney fees. *See* Full Satisfaction of Judgment from August 5, 2024 Opinion and Order 2, ECF 137. And although neither plaintiff has made a personal guarantee to pay the costs if their appeal fails, there is nothing about plaintiffs' conduct during the pendency of the case that suggests plaintiffs will not comply with further orders. *See Schulken*, 2013 WL 1345716 at *5 (finding that second factor weighed in favor of bond because Washington resident lived "within the jurisdiction of the Ninth Circuit, but outside the jurisdiction of this Court" and had previously not complied with other rules regarding costs).

The third factor, which evaluates the merits of the appeal, weighs strongly in favor of requiring a bond. Plaintiffs' opposition to the motion for bond highlights two of the arguments raised in their appeal, neither of which is likely to succeed on appeal. First, plaintiffs assert that the court "incorrectly applied the stay of discovery under ORS 31.150," and "dismissed the Plaintiff's claims before discovery was undergone (outside of the limited discovery which was under 100 pages with multiple duplicates) using the Rule 56 standard in an ORS 31.150 adjudication in Federal Court." Resp. 4, ECF 135. As an initial matter, discovery was never stayed in this case; when plaintiffs initially filed their complaint in June of 2022, the court set

5 – FINDINGS AND RECOMMENDATIONS

October 7, 2022, as the deadline to complete discovery. *See* Discovery and Pretrial Scheduling Order (June 9, 2022), ECF 2. It was plaintiffs themselves who moved for "limited discovery" in response to defendants' anti-SLAPP motion to strike; there was, so to speak, nothing stopping plaintiffs from serving discovery requests on defendants at any time. *See* Reply 5–8, ECF 136; *see also* Pls. Mot. for Limited Discovery, ECF 43. In considering plaintiffs' motion for limited discovery, the court analyzed the purported conflict identified in plaintiffs' Opening Brief between Oregon's anti-SLAPP statute, which provides for an automatic stay of discovery upon the filing of an anti-SLAPP motion to strike, and the Federal Rules of Civil Procedure. The court agreed with plaintiffs that, pursuant to Ninth Circuit law, the federal rules controlled and discovery was allowed before analyzing the merits of defendants' anti-SLAPP motion to strike because it challenged the factual sufficiency of plaintiffs' claims. *See* Pls. Mot. Limited Discovery 4–5, ECF 43; Opening Brief 33–38, ECF 135 at 52–57; Order (Feb. 14, 2023) 3, ECF 64 (" '[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply' . . . [a]nd 'in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court.' ") (quoting *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018)).

The court then granted in part and denied in part plaintiffs' request to conduct discovery based on the relevance of plaintiffs' requested discovery to the claims at issue in case, to wit, the alleged defamatory statements made by defendant Harmon Johnson regarding the harassment complaint lodged against Holt. *See, e.g.*, Order (Feb. 14, 2023) 8–9 (granting, among other things, plaintiffs' requests for discovery seeking "documents from [the Urban League of Portland] and Harmon Johnson related to the January 2020 harassment complaint lodged against

6 – FINDINGS AND RECOMMENDATIONS

[Holt]" and "policies that are relevant to the January 2020 harassment complaint"). And although it is true that the court did not allow all of the "limited discovery" that plaintiffs sought—specifically discovery requests aimed at various ULPDX board members—the analysis would have been the same for those requests whether plaintiffs had asked for them in connection with "limited discovery" or whether there was some dispute over such requests in the "normal" course of discovery under Rule 56 because there was no allegation in the complaint that any board member made any statement about Holt or otherwise. Thus, those requests simply were not relevant to plaintiffs' claims. *See* Order (Feb. 14, 2023) 6–7, ECF 64. Other than referencing the caption of plaintiff's motion as one seeking "limited discovery," the court never suggested, much less ordered, that discovery as a general matter was stayed or limited by operation of Oregon's anti-SLAPP statute.[3] In other words, to the extent there was any "limit" on the discovery that plaintiffs pursued, those limits were either self-imposed or based on the typical rules governing discovery in federal court—namely here relevance to the alleged claims—and not on any Oregon state law. *See* Order 4–9, ECF 64. Plaintiffs were allowed to seek the discovery they requested that was relevant to proving a prima facie case for defamation or false light invasion of privacy as alleged in the complaint before defendants' anti-SLAPP motion to strike was resolved, just as established Ninth Circuit law requires. *See* Order (Feb. 14, 2023) 3, ECF 64 (citing *Planned Parenthood*, 890 F.3d at 834).

Second, plaintiffs highlight their arguments on appeal that this court erred in ruling that they did not establish a prima facie case for defamation or false light invasion of privacy. *See*

---

[3] Plaintiffs write that "[t]he merits of the appeal support a finding that the 9th Circuit will reverse the District Court's findings, which incorrectly applied the stay of discovery under ORS 31.150, while still requiring the non-movant to meet their summary judgment standard under Rule 56[.]" Resp. 4, ECF 135.

7 – FINDINGS AND RECOMMENDATIONS

Resp. 5, ECF 135. The primary weakness in these arguments is that Harmon Johnson's statements, which are at the core of this dispute, are true; there was in fact a harassment complaint made by an Urban League of Portland employee against Holt. *See* Findings and Recommendations (Sept. 28, 2023) 14–16, ECF 91. Harmon Johnson's statements regarding the existence of a harassment complaint against Holt are therefore not actionable in defamation or false light invasion of privacy. *See id.* at 14–19, ECF 91; *see also* Order (Jan. 4, 2024) 1–2, ECF 101.

To the extent plaintiffs argue that Harmon Johnson's statements, while true, could be actionable because "the light in which that information was conveyed [could] lead a reasonable listener to come to a defamatory conclusion," Opening Brief 24, ECF 135 at 43, that argument is unavailing and unlikely to succeed on appeal. Plaintiffs' position seems to be that Harmon Johnson's statements regarding the "harassment complaint" lodged against Holt wrongly implied that "the complaint was for harassment of a sexual or explicit nature" and that impression was "not corrected" by defendants. *See* Opening Brief 27–28, ECF 135 at 46–47. Plaintiffs do not provide any authority for the proposition that the term "harassment" necessarily carries with it such a specific implication. In any event, Holt's statements that precipitated the harassment complaint were at least implicitly sexual in nature. As the complainant explained, Holt's statement to her, while she was six-months pregnant, that she was "breaking hearts" "insinuate[ed] that [she] was disappointing men who may have been attracted to [her] before [she] became so visibly pregnant." Doe Decl., Ex. 1 at 4, ECF 36-1. The sexually inappropriate connotations attending such a statement need not be explained further here, and no additional "context" changes that analysis. *See* Opening Brief 24, ECF 135 at 43 (asserting that "[s]tatements, although perhaps 'true' when viewed in isolation, may create an overall false

impression when considered in context") (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 984 (9th Cir. 2002)).

Having determined that defendants' motion for an appeal bond should be granted, the next task is to determine the amount of the bond. In doing so, the court may consider "costs such as: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *Quy Troung v. Garden Square Parking Ass'n*, No. 8:17-cv-01758-AG-JDE, 2019 WL 12381118, at *1 (C.D. Cal. Sept. 9, 2019) (citing *Fleury*, 2008 WL 4680033 at *6); *see also* FED. R. APP. P. 39(e). Because the Oregon Anti-SLAPP statute contains a fee-shifting provision, the amount of attorney's fees that plaintiffs may incur in the appeal is also a relevant consideration. *See Quy Troung*, 2019 WL 4680033 at *1 (explaining that attorney's fees are not included in determining the bond amount "unless authorized under a fee-shifting statute"); *see also Senne*, 2023 WL 4238509 at *1 (explaining that the "costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal," which also includes other costs as "defined . . . by an applicable fee-shifting statute") (simplified).

Defendants have requested a bond amount of $96,682, which includes an estimated $3,000 in costs taxable under FRAP 39, with the remainder comprising an estimate of the attorney's fees that defendants would incur on appeal and, if they prevail, would be entitled to recover under O.RS. 31.152(3). Mot. Bond 7–8, ECF 128. That estimate in turn is based on the amount of fees that were awarded to defendants in litigating the case to judgment in this court. *Id.* at 8 ("The issues on appeal will be of similar scope to the issues before the district court, supporting a bond amount of $96,682 for attorney fees and costs in this Court, which is the

9 – FINDINGS AND RECOMMENDATIONS

approximate amount of attorney fees the Portland Defendants were awarded in the district court."). Plaintiffs concede that the $3,000 in estimated costs under FRAP 39 is appropriate to include in the bond. Resp. 5, ECF 135. Plaintiffs do not object to the estimated attorney's fees on any factual basis (by, for example, disputing the estimated amount of time that defense counsel may have to spend on the appeal given its scope). Instead, plaintiffs assert that as a matter of law the attorney's fees should not be included in the bond because "there is a circuit split on the application of O.R.S. 31.150 fees in federal court when applying federal summary judgment standards" to a motion to strike brought under Oregon's anti-SLAPP statute. Resp. 5–6, ECF 135 (some capitalization omitted). The purported "split" in authority described in plaintiff's Opening Brief largely addresses the *Erie* doctrine procedural conflict in certain cases between state anti-SLAPP statutes that provide for an automatic stay of discovery upon the filing of a special motion to strike and allow for an early, pre-discovery dismissal of a claim where a plaintiff cannot demonstrate a "reasonable probability" of prevailing on its claims, and Federal Rule of Civil Procedure 56. *See Planned Parenthood*, 890 F.3d at 833 (explaining that the "automatic stay on discovery" in state anti-SLAPP statute conflicts "with the discovery-allowing aspect of Rule 56" and holding that to "prevent the collision of . . . state procedural rules with federal procedural rules," anti-SLAPP motions to strike would be reviewed "under different standards depending on" whether the motion was based on legal or factual deficiencies).

But even assuming that there is some unresolved spilt on that question following *Planned Parenthood*, the award of attorney's fees under Oregon's anti-SLAPP statute is a substantive issue that does not carry the same *Erie* doctrine implications. *See id.* at 833 (noting that "some portions of [state] anti-SLAPP law have been found not to conflict with the Federal Rules of Civil Procedure—such as" the section "providing fees and costs") (citing *Metabolife Int'l, Inc. v.*

10 – FINDINGS AND RECOMMENDATIONS

*Wornick*, 264 F.3d 832, 845 (9th Cir. 2001)); *see also Kearney v. Foley*, No. 3:05-cv-02112-AJB-JLB, 2007 WL 10031079, at *3 (S.D. Cal. June 21, 2007) ("[U]nder *Erie*, whether to award attorneys' fees is a substantive issue that the federal court sitting in diversity will apply.") (citing *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 93, 971-73 (9th Cir. 1999) (holding California anti-SLAPP statute's provision that permitted attorney's fees for parties successfully striking suit under the statute could be applied in diversity cases)). In sum, defendants' estimate of the fees that are likely to be incurred in defending against the appeal is reasonable, and plaintiffs have not offered any persuasive factual or legal basis to the contrary.

## RECOMMENDATIONS

Defendants' Motion for Cost Bond (ECF 128) should be granted and plaintiffs should be ordered to file a bond in the amount of $96,682 to ensure payment of defendants' costs and attorney's fees on appeal.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, January 03, 2025. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

//
//
//
//

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED December 16, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
